38 A.3d 1037 (2011)
COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION and CompServices, Inc., Petitioners
v.
WORKERS' COMPENSATION APPEAL BOARD (CLIPPINGER), Respondent.
No. 1142 C.D. 2011
Commonwealth Court of Pennsylvania.
Submitted on Briefs October 7, 2011.
Decided December 30, 2011.
*1039 Matthew B. Esslinger, Camp Hill, for petitioners.
Richard F. Maffett, Jr., Harrisburg, for respondent Larry Clippinger.
BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and FRIEDMAN, Senior Judge.
OPINION BY Judge SIMPSON.
In this workers' compensation appeal, the Commonwealth of Pennsylvania, Department of Transportation and CompServices, Inc. (collectively, Employer) ask whether the workers' compensation authorities erred in denying their petition for review of a utilization review (UR) determination. Additionally, Employer challenges the grant of Larry Clippinger's (Claimant) petition to review medical treatment and/or billing and his penalty petition. Employer argues the workers' compensation authorities erred in: (1) determining Employer was responsible for the unliquidated costs of purchasing and installing a new home therapy pool and an addition to Claimant's home to house the pool; (2) granting Claimant's penalty petition; and, (3) awarding unreasonable contest attorney fees and litigation costs. Upon review, we vacate in part, affirm in part, and remand.
In 1992, Claimant sustained a low back injury while working for Employer. The nature of the injury was described as "spinal stenosis, herniated disc at L4-5." Workers' Compensation Judge's (WCJ) Op., 6/2/10, Finding of Fact (F.F.) No. 1. Employer recognized Claimant's injury through a suspension agreement.[1] WCJ's Ex. 1 at 1.
In May 2008, Claimant filed a penalty petition alleging Employer refused to pay *1040 medical bills related to the treatment of his work injury, including bills for physical therapy and prescriptions. He sought a 50% penalty on all late and unpaid bills from September 2004, and ongoing, as well as attorney fees. Claimant also filed a petition to review medical treatment and/or billing, alleging Employer refused to pay medical bills for the treatment of his work injury and seeking payment for the installation of an aquatic therapy pool at his home.
In September 2008, Claimant filed a UR request, seeking review of the reasonableness and necessity of a HydroWorx home fitness pool and the construction of an additional room to house it. In the UR Determination, Dr. William Spellman, M.D., found the HydroWorx home fitness pool and the construction of an additional room to house it was reasonable and necessary, "if alternative means were not available."
Employer subsequently filed a petition for review of the UR determination, seeking review of the reasonableness and necessity of a home fitness pool and construction of an additional room to house it. Hearings ensued before a WCJ on Claimant's petition to review medical treatment and/or billing and his penalty petition as well as Employer's petition for review of the UR determination.
Before the WCJ, Claimant provided the following testimony. In 1992, Claimant injured his lower back at work. Shortly thereafter, he underwent surgery and returned to work. In June 2000, Claimant suffered a recurrence of his lower back injury and, several months later, he underwent a second surgery. Postoperatively, Claimant suffered paralysis from the waist down. As a result, Claimant underwent a third surgery. In late-2000, Claimant returned to part-time sedentary work before returning to full-time sedentary work several months later.
Claimant suffered permanent impairment from the waist down, which includes partial paralysis, weakness, loss of sensation, difficulty with balance and partial bowel and bladder dysfunction. Claimant strains to stand up, his muscles do not respond, and he does not have any feeling in his legs. Claimant is able to walk with a cane, but he must use ankle braces if he is walking on uneven ground. Claimant's lack of feeling in his feet make it difficult for him to transition from smooth to rough surfaces when walking. Claimant has trouble with the start-up motion of getting out of a chair because of a lack of feeling in his legs, and he needs to grab onto a handrail until he can get his cane. Claimant can mostly dress himself, but his wife assists him in putting on his socks and shoes.
Because Claimant's neurological deficit interferes with his ability to perform landbased exercise, Dr. Ronald Lippe, M.D. (Claimant's Physician), prescribed aquatic therapy, which relieves muscle soreness and helps build stamina. Claimant receives aquatic therapy at a physical therapy facility, but he explained the facility is busy with other patients. Claimant has difficulty getting from his vehicle to the building, particularly if it is wet and slippery, he has difficulty changing in the locker room, and he has difficulty walking in the locker room because the floor is slippery. There is no one to help him in the locker room, but if he is at home, his wife can help him. Claimant explained his Physician prescribed a HydroWorx home therapy pool for Claimant's aquatic therapy, which is a small pool with a treadmill that can be raised and lowered, allowing Claimant to get in and out of the water without twisting his back. Claimant also testified he submitted prescriptions for *1041 Methylprednisolone, Flomax, Meloxicam, Buspiron, and Clonazepam to Employer for reimbursement, but he did not receive reimbursement for these prescriptions.
Claimant also presented deposition testimony from his Physician, a board certified orthopedic surgeon, who began treating Claimant in January 1992. Claimant's Physician testified as follows. Claimant underwent back surgery in March 1992. Claimant suffered a recurrence of his work-related low back injury in 2000, resumed treatment and again underwent back surgery. During the post-operative period, Claimant sustained a herniation in his back that resulted in cauda equina syndrome, that is, Claimant had such a large herniation that it caused occlusion of his spinal canal, resulting in the loss of function in his legs, bowel and bladder. Claimant underwent a third surgery, but he was left with permanent, significant residual defects. Claimant's Physician explained he prescribed aquatic therapy because Claimant's neurological deficit interferes with his ability to exercise, and it is important for him to exercise for his heart, his lungs, and for his muscles that do function.
Claimant's Physician recommended Claimant obtain a therapeutic pool with a treadmill, which would allow his body to be in the water as he exercises and uses his legs. Claimant's Physician opined the pool would help manage Claimant's pain. He further opined aquatic therapy is reasonable and necessary and causally related to Claimant's work injury, and he should perform aquatic therapy five days a week, one hour at a time, for the rest of his life. Claimant's Physician opined it would be more beneficial and safer for Claimant to perform aquatic therapy at home because it would be risky for him to walk around a gym on slippery floors. There is also a possibility that if Claimant used a public facility, someone could bump into him or he might have to move quickly, resulting in a fall and possibly a very severe injury. Claimant's Physician also opined that prescriptions for Methylprednisone, Flomax, Meloxicam, Buspar and Clonazepam were reasonable and necessary for Claimant's work injury.
In opposition, Employer presented deposition testimony by Dr. William Spellman, M.D. (Employer's Physician), who is also board certified in orthopedic surgery. Employer's Physician examined Claimant in October 2008. He opined Claimant suffered a back injury and developed cauda equine syndrome, a neurological problem related to his back injury. Employer's Physician opined Claimant has significant residuals related to his cauda equine syndrome, and he continues to have problems with fluid management in his lower extremities, secondary to the neurological injury to his low back. Employer's Physician conducted the utilization review in this matter. Employer's Physician opined the prescribed aquatic therapy was reasonable and necessary and was causally related to the work injury. However, Employer's Physician opined, as long as there are other, reasonable ways of performing aquatic therapy, it would not be appropriate for Claimant to have a therapy pool installed in his home.
Ultimately, the WCJ credited Claimant's testimony. Additionally, the WCJ credited Claimant's Physician's testimony based on the length of time he treated Claimant. The WCJ accepted Employer's Physician's testimony to the extent it corroborated the credible testimony of Claimant's Physician. Specifically, he accepted Employer's Physician's testimony that Claimant's prescriptions were causally related to his work injury. The WCJ also accepted Employer's Physician's testimony that aquatic therapy is reasonable and necessary for *1042 Claimant's work injury. However, the WCJ determined Employer's Physician's objections to Claimant's "home-based" aquatic therapy were "neither legally competent nor factually relevant." F.F. No. 54.
Based on these determinations, the WCJ granted Claimant's review and penalty petitions and denied Employer's petition for review of the UR determination. The WCJ further found Claimant's prescriptions were causally related to his work injury. Additionally, the WCJ determined the installation of a physical therapy pool in Claimant's home, along with the necessary renovations to install the pool, was reasonable and necessary. The WCJ also determined Employer did not present competent medical evidence to justify its failure to pay for Claimant's prescriptions or for the installation of a physical therapy pool in Claimant's home. As a result, the WCJ awarded a 50% penalty. The WCJ also concluded Employer engaged in an unreasonable contest and awarded $8,820 in attorney fees. Finally, the WCJ awarded $2,274.85 in litigation costs.
On Employer's appeal, the Workers' Compensation Appeal Board (Board) affirmed. In upholding the WCJ's determination that installation of the in-home therapy pool was reasonable and necessary, the Board analogized this case to our Supreme Court's decision in Griffiths v. Workers' Compensation Appeal Board (Seven Stars Farm, Inc.), 596 Pa. 317, 943 A.2d 242 (2008) (quadriplegic claimant may be entitled to a wheelchair accessible van because the van may constitute an "orthopedic appliance" under Section 306(f.1)(1)(ii) of the Workers' Compensation Act (Act),[2] 77 P.S. § 531(1)(ii), depending on the specific facts of the case). The Board also affirmed the WCJ's grant of Claimant's penalty petition as well as the award of attorney fees and litigation costs. Employer now petitions for review to this Court.
On appeal,[3] Employer contends the workers' compensation authorities erred in: (1) determining it was responsible for the costs of purchasing and installing a home therapy pool and an addition on Claimant's house; (2) granting Claimant's penalty petition; and, (3) awarding Claimant unreasonable contest attorney fees and litigation costs.

I. Reasonableness and Necessity of an In-Home Therapy Pool and an Addition on Claimant's Home
Employer first argues a review of Griffiths, relied on by the Board, regarding "orthopedic appliances," results in a determination that an item is only considered an orthopedic appliance where it allows a claimant access to mobility and medical treatment, which, absent the appliance, the claimant could not obtain. Employer contends that situation is not present here. Rather, in this case, Claimant works fulltime, albeit in a restricted capacity, and is able to access a physical therapy center where he receives aquatic therapy from a licensed therapist. Nevertheless, Employer argues, Claimant cites problems such as changing, the time it takes to receive treatment, and undocumented safety issues, to justify his desire for an in-home therapy pool and an addition on his home to house the pool. As a result, Employer maintains, the Board erred in determining *1043 the home therapy pool and an addition on Claimant's home are orthopedic appliances. Despite profound sympathy for Claimant's situation, we are constrained to agree in part.
Section 306(f.1)(1)(i) of the Act, 77 P.S. § 531(1)(i), provides, in pertinent part, "the employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies, as and when needed." Section 306(f.1)(1)(ii) of the Act, 77 P.S. § 531(1)(ii), indicates, "[i]n addition to the above services, the employer shall provide payment for medicines and supplies, hospital treatment, services and supplies and orthopedic appliances, and prostheses in accordance with this section." (Emphasis added). Generally, pursuant to Section 306(f.1)(5) of the Act, 77 P.S. § 531(5), payment for medical expenses must be made within 30 days of receipt of the bills.
In Griffiths, the Supreme Court considered "whether a van modified to make it wheelchair accessible for a ... claimant rendered quadriplegic by a work-related injury is an orthopedic appliance' under Section 306(f.1)(1)(ii) of the [Act]...." Id. at 321, 943 A.2d at 244. The Court held the van, and not merely a wheelchair lift and modifications installed in the van, may qualify as an indispensable device necessary to accommodate the claimant's catastrophic work injury, and, thus, may fall within the definition of an orthopedic appliance. In so holding, the Court explained:
What matters here is that [the claimant] does not seek the modified van at issue as a `lifestyle choice,' or for the reasons other people might purchase a van or a sport utility vehicle. For [the claimant], the need for the modified van is a direct result of his work injury and, in his circumstances at least, it directly addresses the lack of mobility caused by that work injury. Without his wheelchair, [the claimant] would be confined to a bed or a room; without a van equipped to handle his wheelchair, [the claimant] would be confined to the limited area he could travel in that wheelchair. Whatever a van may represent to others fortunate to have unrestricted powers of ambulation, in circumstances such as these, the van indeed is an appliance that addresses and is directly responsive to the permanent orthopedic issue brought on by [the claimant's] work injury.
Moreover, there is some force in [the claimant's] argument that a modified van is critical to his ongoing care and health, as he must travel for the followup medical care that has become a permanent necessity in his condition. Just as importantly, there is force in [the claimant's] argument that the remedial purposes of the Act are not satisfied by the narrowest approach to what it is that will make an injured person nearer to whole. The wheelchair and the modified van [the claimant] has sought from [the] [e]mployer do not begin to compensate' [the claimant] for the quadriplegia that resulted from his work injury. [The claimant] has lost the ability to stand, to walk, to run, to operate an ordinary vehicle, to ride in a friend's car, to hail a cab. He has lost the free mobility he had, and that others take for granted. To a person in [the claimant's] condition, the van is crucial to restore some small measure of the independence and quality of life that existed before the work injury. Because the present restrictions on [the claimant's] life and mobility were caused by his service to his employer, and a modified van directly addresses and helps to remediate that very harm, we conclude that a wheelchair *1044 accessible van qualifies under the broad definition of orthopedic appliances employed in the Act.
Id. at 339-340, 943 A.2d at 255-56 (footnote omitted); see also Enterprise Rent-A-Car v. Workers' Comp. Appeal Bd. (Clabaugh), 934 A.2d 124 (Pa.Cmwlth.2007) (quadriplegic claimant entitled to home renovations in order to permit long-term in home medical care where the only other alternative was to place the claimant in a supervised living facility); Rieger v. Workmen's Comp. Appeal Bd. (Barnes & Tucker Co.), 104 Pa.Cmwlth. 42, 521 A.2d 84 (1987) (paraplegic claimant, who required use of a wheelchair, was entitled to inexpensive alterations to his home that made it wheelchair accessible as well as the costs of installation of hand controls for his vehicle).
The Court went on to caution, however, that the extent of an employer's obligation will depend upon the specific facts of the case. Thus, the claimant in Griffiths "did not have access to a vehicle that was adequate to transport him and his wheelchair." Griffiths, 596 Pa. at 342, 943 A.2d at 257. The Court therefore referred to an "indispensible device necessary to accommodate this sort of catastrophic injury...." Id. at 321, 943 A.2d at 244 (emphasis added). Also, the Court observed that in order to avoid "windfalls," other circumstances deserved consideration. For example, the Act did not require that an orthopedic device be brand new. Id. at 341-42, 943 A.2d at 257. In addition, the claimant's circumstances prior to his injury, including the pre-injury ownership, usage and value of vehicles, deserved focus. Id. Ultimately, the Supreme Court remanded the case for further fact-finding.
Unlike the Board, we see limited factual similarity between Griffiths and the case presently before us. First, while the Claimant's deficits are very significant and deserve our most thoughtful consideration, he is not wheelchair-bound. Fortunately, Claimant continues to perform full-time, modified duty work in a clerical position for Employer. Reproduced Record (R.R.) at 10a. Additionally, unlike the claimant in Griffiths who, without the use of the van, would be confined to a bed or a room, Claimant here is sufficiently mobile to work full-time and to travel to a physical therapy facility to receive aquatic therapy. R.R. at 119a-20a.
Second, unlike in Griffiths, where the van was "indispensible," here a viable alternative to a new in-home pool exists. Indeed, Claimant receives aquatic therapy treatment at a nearby facility, id., and he did not, as of the time of the WCJ hearings, encounter a problem with transportation to the facility. R.R. at 153a. Further, these facilities have on-staff physical therapists. R.R. at 147a, 152a, 157a-58a. Moreover, in the UR determination, the reviewer determined an in-home therapy pool was reasonable and necessary, "if alternative means were not available." F.F. No. 42 (emphasis added). By Claimant's own testimony, alternative means exist. R.R. at 119a-20a.
The WCJ made several findings that installation of an in-home pool was preferable to Claimant performing aquatic therapy at a public facility for reasons of safety, accessibility and, to some extent, convenience.[4] Although we acknowledge *1045 the WCJ's concerns over possible safety issues at a public facility, many of these concerns exist for any injured claimant undergoing physical therapy at a public facility and are not specific to Claimant. As such, these findings by themselves do not justify installation of a new in-home Hydroworx pool at Claimant's home and a new addition to house it.
More importantly, the WCJ erred by failing to consider all the circumstances, including circumstances that may relate to an "indispensible device" and to "windfalls." This is most obvious in the WCJ's curt dismissal of Employer's Physician's concern for alternative means as "neither legally competent nor factually relevant." F.F. No. 54. The existence of alternative means and the concern for "windfalls" are clearly matters to be evaluated. See Griffiths. The cost of the claimant's new van and the value of vehicles he owned before his injury were relevant to the Supreme Court in Griffiths. Similarly, the cost of the proposed "orthopedic appliances" and the current and post-improvement values of Claimant's home are so obviously relevant as to dispel the need for further discussion. Unfortunately, the WCJ here made no findings about any of these essential circumstances. Moreover, alternatives to brand new construction were not considered. This patent legal error requires vacation of the "orthopedic appliance" portion of the WCJ's decision. Like the Supreme Court's disposition in Griffiths, further fact-finding is necessary.
Our concerns are consistent with those expressed by jurists elsewhere. Although there are no Pennsylvania cases that address whether a claimant is entitled to installation of a new in-home pool, in Kraft Dairy Group v. Cohen, 645 So.2d 1072 (Fla.Dist.Ct.App.1994), the District Court of Appeal of Florida recognized:

Requiring an E/C [ (employer/carrier) ] to pay for the installation of a pool at a claimant's home has been characterized as "highly extraordinary relief." Haga v. Clay Hyder Trucking Lines, 397 So.2d 428 (Fla. 1st DCA 1981), rev. denied, 402 So.2d 609 (Fla.1981). Haga involved a claimant that had both legs amputated after suffering severe burns in a compensable accident. The E/C in Haga refused to construct a pool at claimant's home and offered instead membership in a health spa located 25 miles away that was only open three *1046 days a week. This Court reversed the order denying a home pool and remanded with instructions that the E/C either install the pool or provide claimant with daily access to a pool within a reasonable distance from his home. However, we stated that our decision should only apply to the unusual facts presented. Id. at 428-29.

This Court has affirmed orders requiring the E/C to provide claimant with a pool or to reimburse a claimant for construction of a home pool under unusual circumstances. Escambia County Bd. of County Comm'rs v. Phipps, 553 So.2d 269 (Fla. 1st DCA 1989) (order awarding the installation of a heated vinyl swimming pool at claimant's home should be affirmed because claimant has a need for hydrotherapy, the closest public pool is 30-40 miles from claimant's home and the trip tends to aggravate claimant's injury); Sacred Heart Hosp. v. Grafton, 451 So.2d 1018 (Fla. 1st DCA 1984) (evidence supported findings that swimming was the only form of exercise claimant could safely perform and that the closest pool to claimant's home was 56 miles away; thus, deputy's conclusion that claimant should be reimbursed for pool was proper under "restrictive standards enunciated... in Haga"). Firestone Tire & Rubber Co. v. Vaughn, 381 So.2d 740 (Fla. 1st DCA 1980) (award of pool to claimant who had undergone twelve operations, who took daily pain medication, who used an electrode machine to combat pain, and who swam three to five times daily, including during the night when he could not sleep, should be affirmed based upon these highly unique circumstances).
Kraft Dairy Grp., 645 So.2d 1072, 1076 (emphasis added). Unlike the cases referenced by the District Court of Appeal of Florida, in this case, a viable alternative to a new in-home pool exists. As such, it is not clear that all the circumstances support the extraordinary relief of installation of a new in-home pool as well a new addition to Claimant's home to house the pool.

II. Award of 50% Penalty
Employer next contends the WCJ and the Board erred in awarding Claimant a 50% penalty on the costs of the purchase and installation of the Hydroworx home therapy pool as well as the addition on Claimant's home. Specifically, Employer argues Claimant did not prove he satisfied the Act's billing requirements by submitting an estimate for these costs into evidence. Employer further asserts Claimant did not prove he properly submitted the prescriptions at issue to Employer, and his own medical expert acknowledged he did not know whether he supplied Employer with the necessary reports regarding the causal relationship of these prescriptions to the work injury.
With regard to the imposition of penalties under Section 435 of the Act,[5] this Court previously stated:
In order for the imposition of penalties to be appropriate, a violation of the *1047 Act or of the rules and regulations issued pursuant to the Act must appear on the record. However, the imposition of a penalty is at the discretion of the WCJ. Thus, the imposition of a penalty is not required even if a violation of the Act is apparent on the record. Because the assessment of penalties, as well as the amount of penalties imposed, is discretionary, we will not overturn a penalty on appeal absent an abuse of discretion by the WCJ.
Farance v. Workers' Comp. Appeal Bd. (Marino Brothers, Inc.), 774 A.2d 785, 789 (Pa.Cmwlth.2001) (citations omitted).
A claimant who files a penalty petition must first meet his initial burden of proving a violation of the Act or the attendant regulations occurred; the burden then shifts to the employer to prove the violation did not occur. City of Phila. v. Workers' Comp. Appeal Bd. (Andrews), 948 A.2d 221 (Pa.Cmwlth.2008).
Further, this Court holds that an employer's unjustified, unilateral withholding of medical expenses in violation of the Act triggers the penalty provision at Section 435. Loose v. Workmen's Comp. Appeal Bd. (John H. Smith Arco Station), 144 Pa.Cmwlth. 332, 601 A.2d 491, 494 (1991). Of further note,
Section 306(f.1)(5) of the Act states, in pertinent part: `All payments to providers for treatment provided pursuant to this act shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to paragraph (6).' (Emphasis added). Further, Section 127.208(e) of the Regulations states, in pertinent part: `The insurer's right to suspend payment shall further continue beyond the UR process to a proceeding before a workers' compensation judge, unless there is a UR determination made that the treatment is reasonable and necessary.' (Emphasis added). Moreover, Section 127.208(g) of the Regulations states, in pertinent part: `If a URO determines that medical treatment is reasonable or necessary, the insurer shall pay for the treatment. Filing a petition for review before a workers' compensation judge, does not further suspend the obligation to pay for the treatment once there has been a determination that the treatment is reasonable or necessary.' (Emphasis added).
While Section 306(f.1)(5) of the Act unambiguously provides for suspension of payment to medical providers if there is a dispute concerning the reasonableness and necessity of treatment, Sections 127.208 (e) and (g) of the Regulations just as clearly provide that such suspension of payment ends if there is a UR determination that the treatment is reasonable and necessary....
Scranton Sch. Dist. v. Workers' Comp. Appeal Bd. (Carden), 994 A.2d 1162, 1164-65 (Pa.Cmwlth.2010).
Here, the WCJ determined, "[b]ased upon the competent and credible evidence of record, it is found as fact that [Employer's] refusal to pay for Claimant's medical treatment without medical justification violated the Act." F.F. No. 60. As a result, the WCJ awarded Claimant a 50% penalty on the unliquidated cost of the purchase and installation of the Hydroworx home fitness pool, including the cost of renovation of Claimant's home, together with the prescription costs set forth in Claimant's Exhibits 1 through 5, and accrued interest. WCJ Op. at 7, Order at ¶ 6.
Surprisingly, the record lacks an estimate or other evidence of the cost to purchase and install the new pool and the addition to Claimant's home. In fairness *1048 to Claimant, his attorney was prepared to offer evidence in this regard, but he was discouraged from doing so by the WCJ. Nevertheless, it is impossible to quantify the penalty award. Based on this lapse and on our conclusion that the WCJ did not consider all the relevant circumstances, including circumstances relating to "indispensible devices" and "windfalls," we also vacate the award of a penalty on those unspecified costs.
With regard to the award of a penalty on Employer's failure to pay for Claimant's prescriptions, Employer does not dispute it did not pay these costs. Rather, it argues the record lacks evidence that Claimant properly submitted bills for these prescriptions on the required forms.[6] In support, Employer points out that Claimant's Physician conceded he did not provide Employer any documentation regarding the prescriptions. R.R. at 187a-88a. Employer further contends that although the Board determined Employer waived any issue concerning Claimant's failure to properly submit the bills, Employer did, in fact, raise this issue before the WCJ. See R.R. at 136a.
Claimant responds Employer waived the issue regarding his improper submission of medical bills by failing to raise it before the WCJ. Further, Claimant maintains, his uncontradicted testimony before the WCJ established he inquired of Employer's carrier's adjuster about reimbursement of medical expenses and was instructed to send the adjuster a cover letter with the receipts. Claimant argues he also testified he sent letters to Employer requesting payment, but no payment was forthcoming. Claimant contends failure to submit the required forms and reports does not excuse Employer from penalties for failure to pay medical expenses when Employer's instructions indicated it did not require such forms.
Initially, we disagree with the Board that Employer waived this issue by failing to raise it before the WCJ. Contrary to the Board's determination, our review of the record reveals this issue was, in fact, raised before the WCJ, see R.R. at 135a-36a, as well as in Employer's appeal to the Board. See Certified Record, Employer's Appeal from Judge's Findings of Fact and Conclusions of Law.
Nevertheless, in Kuemmerle v. Workers' Compensation Appeal Board (Acme Markets, Inc.), 742 A.2d 229 (Pa.Cmwlth. 1999), this Court held a provider's failure to submit the required written reports to the employer's insurance carrier did not excuse an employer from penalties for failure to pay bills where the carrier did not require medical reports in all instances for payment of medical services. Accord Seven Stars Farm, Inc. v. Workers' Comp. Appeal Bd. (Griffiths), 935 A.2d 921 (Pa. Cmwlth.2007).
Here, the WCJ found Claimant's prescriptions were causally related treatment *1049 for his work injury. F.F. No. 55. The WCJ also found "Claimant followed the instructions of [Employer's insurance carrier's] adjuster by sending his receipts with a cover letter to be reimbursed for his out-of-pocket payments, but he was not reimbursed." F.F. No. 38. Additionally, the WCJ found Claimant submitted exhibits documenting his out-of-pocket payments for the medications for which he sought reimbursement. F.F. Nos. 39. The WCJ credited Claimant's testimony. F.F. No. 52.
Based on Claimant's credited testimony, Employer did not require medical reports in all instances for payment of services. Under these circumstances, Employer is liable for a penalty for its failure to pay for Claimant's prescriptions.

III. Unreasonable Contest Attorney Fees
Employer next argues the WCJ erred in awarding Claimant unreasonable contest attorney fees. Specifically, Employer contends it presented medical evidence indicating Claimant did not have physical limitations that prevented him from performing aquatic therapy at a physical therapy center. Employer points out its Physician also opined he did not believe an in-home pool was reasonable and necessary because other means were available. Additionally, Employer argues a genuine legal issue existed as to whether an inhome therapy pool constituted an orthopedic appliance.
Pursuant to Section 440(a) of the Act,[7] 77 P.S. § 996, in any contested case where an insurer contests liability in whole or in part, a WCJ shall award counsel fees to an employee in whose favor the matter has been finally adjudicated unless the employer provides a reasonable basis for the contest. "Section 440 ... is intended to deter unreasonable contests of workers' claims and to ensure that successful claimants receive compensation undiminished by costs of litigation." Eidell v. Workmen's Comp. Appeal Bd. (Dana Corp.), 155 Pa.Cmwlth. 254, 624 A.2d 824, 826 (1993) (citation omitted).
The issue of whether an employer's contest is reasonable is a legal conclusion based on the WCJ's findings of fact. Yespelkis v. Workers' Comp. Appeal Bd. (Pulmonology Assocs. Inc.), 986 A.2d 194 (Pa. Cmwlth.2009). The reasonableness of an employer's contest depends on whether the contest was prompted to resolve a genuinely disputed issue or merely to harass the claimant. Id.
Here, the WCJ determined Employer presented no competent medical evidence to justify its failure to pay for Claimant's prescriptions as Employer's Physician agreed that "certain of Claimant's medications were for his work injuries; as to the others, he expressed no opinion." F.F. No. 56. The WCJ also found Employer did not produce medical evidence to "justify its failure to pay for installation of a physical therapy pool in [Claimant's] home; it merely produced [Employer's Physician's] opinions based on his personal, political, social and cultural beliefs." F.F. No. 57. Based on these findings, the WCJ determined Employer did not engage in a reasonable contest.
We disagree with the WCJ's determination that Employer's contest was unreasonable. The issue of whether a new inhome therapy pool and an addition to a claimant's home constitute an "orthopedic appliance" is a novel legal issue. See, e.g., Chichester Sch. Dist. v. Workmen's Comp. Appeal Bd. (Fox), 140 Pa.Cmwlth. 224, 592 A.2d 774 (1991) (reasonable contest existed *1050 where case presented novel legal question). In addition, Employer presented a reasonable factual defense as to whether a new in-home therapy pool is an "indispensible device" or constitutes a "windfall" where alternate means of therapy are currently used by Claimant without incident. See Griffiths. Therefore, we vacate the WCJ's award of unreasonable contest attorney fees as to the "orthopedic appliance" issue.
However, we agree with the WCJ that Employer engaged in an unreasonable contest to the extent it refused to pay for Claimant's prescriptions, which Employer's Physician did not dispute were causally related treatment for the work injury. As such, we remand to the WCJ for a reconsideration of the unreasonable contest attorney fee award based solely on Employer's failure to pay Claimant's prescriptions. See Wallace v. Workmen's Comp. Appeal Bd. (Pittsburgh Steelers), 722 A.2d 1168 (Pa.Cmwlth.1999) (remanding for determination of attorney fees where the employer engaged in a partially unreasonable contest); Delaware Valley Fish Co. v. Workmen's Comp. Appeal Bd. (Woolford), 151 Pa.Cmwlth. 387, 617 A.2d 48 (1992) (affirming award of partial unreasonable contest attorney fees).

IV. Litigation Costs
As a final issue, Employer asserts the WCJ erred in awarding Claimant litigation costs. Specifically, it argues, because the WCJ erred in granting Claimant's petition to review medical treatment and/or billing and his penalty petition and in denying Employer's petition for review of the UR determination, Claimant should not have prevailed, in whole or in part, before the WCJ. Thus, Employer contends Claimant is not entitled to litigation costs.
Section 440(a) of the Act, provides in relevant part:
In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, ... the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings....
77 P.S. § 996. Thus, in order for a claimant to recover litigation costs, the claimant must first show that he prevailed in whole or in part on an issue that was actually contested before the WCJ. Reyes v. Workers' Comp. Appeal Bd. (AMTEC), 967 A.2d 1071 (Pa.Cmwlth.), appeal denied, 602 Pa. 671, 980 A.2d 611 (2009); Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating Inc.), 873 A.2d 25 (Pa.Cmwlth. 2005).
Based on our determinations above, Claimant prevailed, in part, on his penalty petition as it relates to Employer's failure to pay for his prescriptions. Thus, he is entitled to litigation costs. See, e.g., Minicozzi.

V. Summary
For the foregoing reasons, we:
1) vacate in part (Paragraphs 2, 6 and 7 of the WCJ's order, relating to "orthopedic appliance"); and
2) affirm in part (award of penalty and unreasonable contest attorney fees for failure to pay for prescriptions; award of litigation costs); and
3) remand for proceedings consistent with the above discussion. The remand should include further fact-finding *1051 that examines all circumstances affecting Claimant, including those relating to "indispensible devices" and "windfalls," as discussed by our Supreme Court in Griffiths, as well as a reconsideration of the amount of the unreasonable contest attorney fee award. We leave to the discretion of the workers' compensation authorities assignment on remand.

ORDER
AND NOW, this 30th day of December, 2011, the order of the Workers' Compensation Appeal Board is VACATED in part, AFFIRMED in part, and REMANDED for proceedings consistent with the foregoing opinion.
Jurisdiction is relinquished.
NOTES
[1] Claimant subsequently filed a reinstatement petition, which was granted in 2001.
[2] Act of June 2, 1915, P.L. 736, as amended.
[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Hershgordon v. Workers' Comp. Appeal Bd. (Pepboys, Manny, Moe & Jack), 14 A.3d 922 (Pa.Cmwlth.2011).
[4] Specifically, the WCJ found:

20. [Claimant's Physician] testified it is reasonable and medically necessary for a Hydrowor[x] pool to be installed in Claimant's home, rather than using a public facility, because it would provide more benefit and be safer.
* * *
22. At public facilities, Claimant has difficulty navigating from where he must park his car to his destination inside the facility because of: uneven surfaces; rough and smooth surfaces; walking up a grade; distance; and, slippery conditions.
23. Public aquatic therapy facilities are busy with other patients not aware of Claimant's disabilities, creating a danger someone might bump him, or he might try to move out of the way quickly, causing a fall and severe injury[.]
24. Claimant has trouble changing his clothes in the locker room of a public facility because he can't bend normally and there is no one to assist with his socks and shoes.
25. The floor from the pool to the locker room at public facilities is sometimes wet and slippery, which places Claimant at risk of falling.
26. Aquatic therapy takes Claimant 2 1/2 to 3 hours per day to do at a public facility, including travel time.
27. Claimant has only been getting 3 sessions of aquatic therapy per week at a public facility.
28. A fitness pool in Claimant's home would benefit him more than at a public facility because he could use it more often.
29. For safety purposes, Claimant's wife would be with him when he used the Hydrowor[x] pool at home.
30. If the Hydrowor[x] fitness pool were installed in Claimant's home, non-slip material could be used on the floor, together with hand-railings.
F.F. Nos. 20, 22-30.
[5] Section 435(d)(i) of the Act, added by the Act of February 8, 1972, P.L. 25, as amended, 77 P.S. § 991(d)(i), provides, in pertinent part:

(d) The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:
(i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays....
[6] Section 127.201(a) of the Medical Cost Containment Regulations states: "Requests for payment of medical bills shall be made either on the HCFA Form 1500 or the UB92 Form (HCFA Form 1450), or any successor forms, required by HCFA for submission of Medicare claims." 34 Pa.Code § 127.201(a). In turn, Section 127.202(a) provides that "[u]ntil a provider submits bills on one of the forms specified ... insurers are not required to pay for the treatment billed." 34 Pa.Code § 127.202(a). Further, 34 Pa.Code § 127.203 also requires that medical reports be submitted before payment is due. The provisions of 34 Pa.Code § 127.203(a) and (d) state, "[p]roviders who treat injured employes are required to submit periodic medical reports to the employer" and "[i]f a provider does not submit the required medical reports on the prescribed form, the insurer is not obligated to pay for the treatment covered by the report until the required report is received by the insurer."
[7] Section 440(a) of the Act was added by the Act of February 8, 1972, as amended.