# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra Farabee,                                    :
                          Petitioner              :
                                                   :
          v.                                       :      No. 650 C.D. 2019
                                                   :      Submitted: October 4, 2019
Workers' Compensation Appeal                       :
Board (Ahold USA Holdings, Inc.),                  :
                          Respondent              :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ELLEN CEISLER, Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                    FILED:  January 30, 2020


          Sandra Farabee (Claimant) petitions for review of an Order of the Workers'

Compensation Appeal Board (Board), dated April 30, 2019, that affirmed a decision

of a Workers' Compensation Judge (WCJ), in which the WCJ granted the

termination petition filed by Ahold USA Holdings, Inc. (Employer) and denied

Claimant's review and penalty petitions.  Before this Court, Claimant only

challenges the denial of the penalty petition.[1]  She claims Employer is liable for

---

[1] Claimant's Petition for Review included challenges to the review and termination petitions, but Claimant acknowledges in her brief that she is no longer pursuing those claims. (Claimant's Brief at 6 n.1.)

penalties under Sections 435[2] and 1102[3] of the Workers' Compensation Act (WC Act), based upon a fax that Employer's claims adjuster sent to Claimant's treating physician advising him that it was denying the claim and no further medical benefits would be paid. Claimant argues the fax was misleading and even fraudulent as Employer had already issued a Notice of Compensation Payable (NCP) accepting the work injury. Because Employer was contesting that the medical treatment was causally related to Claimant's work injury and because the WCJ ultimately agreed with Employer, we affirm.

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 991. Section 435 was added by Section 3 of the Act of February 8, 1972, P.L. 25. It provides, in relevant part:

> (d) The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:
> (i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable.

77 P.S. § 991(d)(i).

[3] Section 1102 was added by Section 20 of the Act of July 2, 1993, P.L. 190, and provides, in relevant part:

> A person, including, but not limited to, the employer, the employe, the health care provider, the attorney, the insurer, the State [Workers'] Insurance Fund and self-insureds, commits an offense if the person does any of the following:
> . . .
> (7) Knowingly and with the intent to defraud assists, abets, solicits or conspires with any person who engages in an unlawful act under this section.
> (8) Makes or causes to be made any knowingly false or fraudulent statement with regard to entitlement to benefits with the intent to discourage an injured worker from claiming benefits or pursuing a claim.

77 P.S. § 1039.2(7), (8).

2

## I.  BACKGROUND

On October 4, 2016, Claimant suffered an injury when she picked up a heavy tote at work and heard a popping sound in her right arm.  Employer issued an NCP on November 11, 2016, recognizing the injury as "Sprain or Tear [Internal derangement, a trauma or wrenching of a joint, producing pain and disability depending upon degree of injury to ligaments[]" to the upper and lower arm. (Reproduced Record (R.R.) at 1a.)  On December 2, 2016, Employer issued a nearly identical Amended NCP.

Claimant treated with a panel physician, Barry Lipson, M.D.  On November 7, 2016, a claims adjuster with Employer's insurer faxed Dr. Lipson, stating:  "Please note Sandra [sic] claims has [sic] been denied.  Please forward all medical bills after 10/31/16 to her personal health insurance.  Please fax[] over her last office visit notes . . . ."  (*Id.* at 86a.)  In May 2017, Claimant filed two penalty petitions alleging Employer violated the WC Act by not paying the medical bills.  Employer denied the material allegations in its answers.  On June 21, 2017, Claimant filed a review petition seeking to correct the NCP to reflect an injury to "Claimant's right shoulder SLAP lesion and rotator cuff tear."  (*Id.* at 13a.)  Employer also denied the material allegations of the review petition.  Subsequently, on September 5, 2017, Employer filed its termination petition alleging Claimant fully recovered from her injuries based upon an independent medical examination (IME) performed by Richard J. Mandel, M.D.  Claimant filed an answer denying the material allegations of the termination petition and the various petitions were assigned to the WCJ for disposition.

### A.    *Proceedings before WCJ*

A hearing was held before the WCJ, at which Claimant testified as to her injuries and treatment.[4]   Claimant also submitted the deposition testimony of Dr. Lipson, who testified as follows.[5]  Dr. Lipson practices non-surgical orthopedics and first saw Claimant on October 13, 2016.  After obtaining a patient history, including a description of the mechanism of the injury, Dr. Lipson's initial diagnosis was "[s]train/sprain right shoulder, partial-tear supraspinatus tendon with no retraction to the right shoulder, moderate DJD AC joint right shoulder."  (*Id.* at 34a.)  He attributed the injury to Claimant's work.  Dr. Lipson recommended Claimant undergo an MR arthrogram, which she did.  Dr. Lipson discussed the results of that study with the radiologist who read the films, which revealed "possible bone bruising at the distal clavicle, as well as at the acromion, and there was also thought to be a partial[]tear in the anterior portion of the glenoid labrum."  (*Id.* at 36a.)  Dr. Lipson discussed the results with Claimant and "told her that the injury would have most likely resulted in a bone bruise at the outer end of the clavicle and . . . [he] didn't think the tear specifically at that time was related."  (*Id.* at 37a.)  Dr. Lipson explained that he subsequently learned more about the mechanism of injury and that Claimant could have developed the tear while trying to compensate for her pain.  In a follow-up MRI, some progression of the rotator cuff pathology was noted.  Dr. Lipson ultimately diagnosed Claimant with:

> moderate joint effusion . . . [and] evidence of partial-thickness rotator cuff tears involving the undersurface of the supraspinatus tendon. . . .

---

[4] Claimant's testimony can be found in its entirety on pages 94a-115a of the Reproduced Record and is summarized in the WCJ Decision at Finding of Fact 8.

[5] Dr. Lipson's testimony can be found in its entirety on pages 25a-74a of the Reproduced Record and is summarized in the WCJ Decision at Finding of Fact 6.

> There was moderate subscapularis tendinosis. There was no full-thickness rotator cuff tear.
>
> The other diagnosis was moderate subdeltoid bursitis. Also, moderate biceps tendinosis with fluid in the tendon sheath. AC joint degenerative change of a moderate degree with cystic changes, edema and Type I anterior acromion, and also findings consistent with a SLAP lesion involving the anterior superior and posterior superior aspect of the glenoid labrum.

(*Id.* at 44a.) Dr. Lipson related these findings to Claimant's work. Dr. Lipson further testified that his first two bills were paid, but then he received a fax from the adjuster indicating he would no longer be paid. Upon cross-examination, Dr. Lipson admitted that, at the time, he was not sure the mechanism of injury supported his diagnoses.

Employer presented the deposition testimony of Dr. Mandel, a board-certified orthopedic surgeon with subspecialties in hand and upper extremity disorders, who conducted an IME of Claimant on August 16, 2017.[6] Based upon his examination of Claimant, in which he noted symptom magnification, lack of effort, and embellishment, and his review of the Claimant's medical records, including her various diagnostic studies, Dr. Mandel opined that Claimant suffered a mild bone bruise to the right shoulder as a result of the tote striking her. However, Dr. Mandel did not believe that Claimant suffered a tear to her rotator cuff or injured her labrum from the incident; rather, he testified that most tears of this sort are attributable to the normal aging process. Dr. Mandel further opined that, as of the date of the IME, Claimant was fully recovered from her work-related injuries.

---

[6] Dr. Mandel's testimony can be found in its entirety in the Certified Record at Item 25 and is summarized in the WCJ Decision at Finding of Fact 7.

### B. WCJ Decision

Based upon the above evidence, the WCJ denied and dismissed Claimant's penalty and review petitions and granted Employer's termination petition. In doing so, the WCJ credited Dr. Mandel's testimony over Dr. Lipson's testimony. In rejecting Dr. Lipson's testimony, the WCJ stated his description of Claimant's injury was incorrect and that he did not personally review the MRIs. (WCJ Decision, Finding of Fact (FOF) ¶ 9.) In contrast, the WCJ noted Dr. Mandel's "opinions concerning Claimant's description of injury and full recovery are supported by his review of the MRI studies and other medical records, the mechanism of Claimant's injury and his clinical examination that showed multiple signs of embellishment and symptom magnification." (*Id.* ¶ 10.) In addition, the WCJ noted Dr. Mandel's "superior credentials as a [b]oard-certified orthopedic surgeon and his expertise in treatment of upper extremities" as reasons for crediting his testimony over Dr. Lipson's testimony. (*Id.*) The WCJ further found Claimant's testimony that the work incident caused her significant pain and discomfort was "not persuasive." (*Id.* ¶ 11.)

The WCJ found "Claimant sustained a bone bruise to the right shoulder in the AC joint as a result of the October 4, 2016 work-related injury," from which she fully recovered as of August 16, 2017. (*Id.* ¶¶ 12-13.) Any ongoing pain or symptoms, the WCJ found, were caused by a preexisting degenerative condition that was not affected by the incident at work. Lastly, the WCJ found "Claimant did not submit any evidence to show that [Employer] committed fraud or violated the terms of the [WC] Act to warrant a penalty." (*Id.* ¶ 14.)

Based upon the above findings, the WCJ concluded Claimant did not show she suffered any injury other than a bone bruise to the right shoulder in the AC joint

as a result of the work incident. The WCJ further concluded Employer met its burden of proving Claimant was fully recovered from the work injury and that any ongoing symptoms were not related. Finally, the WCJ concluded Claimant did not meet her burden on the penalty petition by submitting substantial competent evidence to show Employer violated the WC Act or committed fraud.

### C.    Board Opinion and Order

Claimant appealed the WCJ's Decision to the Board, which affirmed. The Board agreed that, based on the WCJ's credibility determinations, Employer met its burden on the termination petition. In regard to Claimant's appeal from the denial of the penalty petitions, the Board noted that at a June 22, 2017 hearing, Employer's "counsel clarified that the adjuster indicated [in the fax] that only bills for the accepted injury would be paid." (Board Opinion (Op.) at 2.)[7] The Board further explained that an employer runs a risk that it will be assessed a penalty if it refuses to pay medical expenses it does not believe are causally related to a work injury if a WCJ later determines that they are causally related. (*Id.* at 8.) Here, though, the Board noted the WCJ found that the treatment was not causally related and denied the review petition seeking to amend the work injury. (*Id.* at 8-9.) Therefore, the Board discerned no error in the WCJ denying the penalty petitions. (*Id.* at 9.) Claimant now seeks review of that Order.

---

[7] The Board later stated that the fax was not submitted into evidence, (Board Op. at 8), which is incorrect. The fax was submitted as an exhibit to Dr. Lipson's deposition testimony and is in the certified record as part of Item 22. The fax also appears in the Reproduced Record at page 86a. However, as explained below, the error is harmless because Employer's unilateral decision to cease paying for medical treatment was based upon its belief that there was no causal relation to the work injury, not because the treatment was not reasonable and necessary.

## II.  PARTIES' ARGUMENTS

On appeal,[8] Claimant no longer challenges the denial of the review petition or the grant of the termination petition.  Instead, Claimant argues the WCJ erred in three ways related to the penalty petitions:  (1) finding there was no record evidence to support the penalty petitions when the fax was such evidence; (2) denying the penalty petitions when Employer refused to pay for medical treatment associated with the accepted work injury; and (3) denying the penalty petitions when Employer fraudulently represented the claim was being denied when, in fact, it had been accepted with an NCP.  Claimant asserts that pursuant to Section 306(f.1) of the WC Act, 77 P.S. § 531, an employer must pay all reasonable and necessary medical expenses related to a work injury.  According to Claimant, an employer may not unilaterally stop making such payments unless it obtains a supersedeas or there is an agreement or some order authorizing such action.  In support of this proposition, Claimant cites *McLaughlin v. Workers' Compensation Appeal Board (St. Francis Country House)*, 808 A.2d 285 (Pa. Cmwlth. 2002).  Claimant also claims that a utilization review (UR) petition is the proper mechanism through which an employer may challenge whether medical treatment is reasonable and necessary, which Employer did not file here.  Instead, Claimant asserts Employer "reach[ed] out to a doctor . . . and l[ied] that this claim was denied when it had in fact been accepted." (Claimant's Brief (Br.) at 12.)  This was "so blatant an attempt to manipulate the process and discourage Claimant's ability to seek treatment for her accepted injury that it constitutes fraudulent conduct under the [WC] Act," Claimant contends.  (*Id.*)

---

[8] Our review is limited to determining whether constitutional rights were violated, errors of law were committed, or necessary findings of fact are supported by substantial evidence. *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 331 n.2 (Pa. 2000).

8

Claimant argues Employer accepted the injury by issuing an NCP and acted contrary thereto, making an "untrue statement" when the adjuster faxed a panel provider days later saying the claim was denied when it was not. (*Id.* at 13.) Claimant asserts the WCJ erred in saying there was no evidence to support a penalty since the fax was introduced as an exhibit to Dr. Lipson's deposition transcript, which was admitted into the record. Claimant also notes that Dr. Lipson testified as to the fax. Claimant acknowledges that the WCJ denied her review petition, but asserts this has no effect on the original injury and denial of payment for medical expenses associated with that injury. Claimant further asserts she sought the testimony of the adjuster, but this request was refused; therefore, the matter should be remanded so that a full and fair hearing may be held on the penalty petitions.

Employer responds that there was no violation of the WC Act or fraud on its part. The fax, according to Employer, advises Dr. Lipson that he should send bills for Claimant's care after October 31, 2016, to her personal insurance because further treatment was not causally related to the work injury. Employer argues that its actions were supported by Dr. Lipson's own testimony that after the diagnostic study on October 24, 2016, he could not attribute the tear to the work injury. Employer acknowledges that it assumed a risk of penalty in unilaterally denying payment for medical costs based upon a lack of causal relation, but asserts that since the WCJ found that the treatment was not causally related to the accepted work injury, there was no violation of the WC Act. Employer further asserts that since no outstanding bills were introduced, Claimant did not meet her burden of showing the unpaid bills were related to the work injury. Moreover, even if Dr. Lipson's testimony provided the causal relation needed, Employer points out that the WCJ did not find Dr. Lipson's testimony credible. Employer further notes that the WCJ adjudicated the

9

work injury as a bone bruise to the right shoulder in the AC joint. Employer posits that the burden is on Claimant to prove a violation of the WC Act or fraud, which Claimant did not do here. It asks this Court to affirm the Board's Order.

## III. DISCUSSION

The WC Act authorizes a WCJ to impose penalties on an employer or insurer if there is a violation of the WC Act. 77 P.S. § 991. In addition, the WC Act provides that it is a violation to "[m]ake[] or cause[] to be made any knowingly false or fraudulent statement with regard to entitlement to benefits with the intent to discourage an injured worker from claiming benefits or pursuing a claim." 77 P.S. § 1039.2(8). A claimant bears the burden of showing that an employer or insurer violated the WC Act. *CVA, Inc. v. Workers' Comp. Appeal Bd. (Riley)*, 29 A.3d 1224, 1227 (Pa. Cmwlth. 2011). Once a claimant meets the prima facie burden, an employer may then offer rebuttal evidence to show that no such violation occurred. *Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger)*, 38 A.3d 1037, 1047 (Pa. Cmwlth. 2011). A WCJ, however, is not required to award penalties, even if it is established that a violation occurred. *The Budd Co. v. Workers' Comp. Appeal Bd. (Kan)*, 858 A.2d 170, 176 (Pa. Cmwlth. 2004). The decision to award or deny penalties is within the sole discretion of the WCJ and is a decision that this Court cannot reverse absent an abuse of that discretion. *Id.*

Further, under Section 306(f.1)(1)(i) of the WC Act, an "employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies, as and when needed." 77 P.S. § 531(1)(i). An employer's obligation to

pay for medical expenses extends only to those causally related to the work injury. *CVA, Inc.*, 29 A.3d at 1227. "Once the employer's liability for the work injury has been established, the employer may not unilaterally stop making benefit payment[s] in the absence of a final receipt, an agreement, a supersedeas[,] or any other order of the WCJ authorizing such action." *McLaughlin*, 808 A.2d at 288. "Absent such authority, . . . the employer must continue to make payment[s] while challenging the claimant's entitlement to benefits." *Id.* at 288-89.

However, there is a "clear distinction" between cases where an employer challenges the reasonableness or necessity of medical treatment and those challenging causation. *Listino v. Workmen's Comp. Appeal Bd. (INA Life Ins. Co.)*, 659 A.2d 45, 47 (Pa. Cmwlth. 1995). In the former, an employer is liable to continue paying medical costs until a termination petition is granted, and an employer may challenge the necessity and reasonableness of medical treatment through a UR petition. 77 P.S. § 531(6); *CVA, Inc.*, 29 A.3d at 1227; *Mulholland v. Workmen's Comp. Appeal Bd. (Bechtel Const.)*, 669 A.2d 465, 468 (Pa. Cmwlth. 1995). In the latter, an employer "may escape [the] penalty provision liability for unilaterally ceasing to pay for these medical benefits, **if** a [WCJ] later determines that these medical bills are indeed not causally related to the work-related injury." *Listino*, 659 A.2d at 47. "An employer [that] unilaterally stops paying a claimant's medical bills based solely on causation[] assumes the risk of exposure to possible penalty liability contingent upon a [WCJ]'s ruling concerning the causal relation of the medical costs." *Id.* at 48; *see also Pryor v. Workers' Comp. Appeal Bd. (Colin Serv. Sys.)*, 923 A.2d 1197, 1203-04 (Pa. Cmwlth. 2006).

Instantly, Employer unilaterally ceased payment of Claimant's medical expenses effective October 31, 2016. Although the fax from the claims adjuster does

11

not state the reason for this decision, it is apparent from a review of the record that Employer's action was predicated on its belief that Claimant's continuing treatment was not causally related to her work injury. First, the timing of the fax came shortly after Claimant underwent the MR arthrogram, which revealed the tear of which Dr. Lipson originally questioned the cause. Dr. Lipson saw Claimant for a recheck on October 24, 2016, at which time he reviewed the results of the MR arthrogram with her. On October 25, 2016, Dr. Lipson authored a letter to the claims adjuster wherein he stated: "I told [Claimant] that her injury would have most likely resulted in a bone bruise at the outer end of the clavicle and that I could not specifically relate the partial labral tear to the mechanism of an acute injury that she described." (Ex. D-1 of Dr. Lipson Dep., Certified Record (C.R.) Item 22.) Dr. Lipson's testimony corroborates his initial belief that the tear was not the result of the work incident. (R.R. at 37a.) On November 7, 2016, the claims adjuster sent the fax advising further bills should be directed to Claimant's personal insurance. Notably, until this point, Employer paid for Claimant's treatment with Dr. Lipson.

Employer's doubt as to the causal relatedness of the treatment is also apparent from a review of the hearing transcripts. At the June 22, 2017 hearing, Employer's counsel explained that the claims adjuster "indicated that she would only pay bills for the accepted injury." (C.R. Item 19 at 6.) Finally, at the December 5, 2017 hearing, Employer acknowledged it was not paying since it did not believe the treatment was related to Claimant's work injury. (R.R. at 93a.) Finally, the fact that Claimant thought it was necessary to file a review petition seeking to amend the description of the injury also supports Employer's position that the treatment was not causally related to Claimant's work injury.

12

Employer's decision to stop paying Claimant's medical bills was not related to the reasonableness or necessity of the treatment, but was based upon whether the treatment was causally related to the accepted work injury. Therefore, Employer assumed the risk that it would be assessed penalties if a WCJ ultimately disagreed with its position. *Pryor*, 923 A.2d at 1203-04; *Listino*, 659 A.2d at 48. Employer's risk here paid off, as the WCJ did not disagree with its position. The WCJ rejected Dr. Lipson's testimony in favor of Dr. Mandel's testimony and found that Claimant suffered "a bone bruise to the right shoulder in the AC joint as a result of the October 4, 2016 work-related injury," from which Claimant was fully recovered. (FOF ¶¶ 9-10, 12-13.) It is well-settled that the WCJ is the factfinder, and the review of the witnesses' testimony and determinations as to the weight and credibility of that evidence are solely for the WCJ. *Miller v. Workers' Comp. Appeal Bd. (Millard Refrigerated Servs. & Sentry Claims Serv.)*, 47 A.3d 206, 209 (Pa. Cmwlth. 2012). "A WCJ may accept or reject the testimony of any witness in whole or in part." *Id.* "[T]he appellate role is not to reweigh the evidence or to review the credibility of the witnesses." *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). Importantly, Claimant no longer challenges the denial of her review petition and the grant of Employer's termination petition. Therefore, the WCJ's Decision that Employer met its burden on the termination petition is binding. As a result, we discern no error in the WCJ also denying the Claimant's penalty petitions when there was no credited evidence that Employer violated the WC Act.

Claimant's reliance on *McLaughlin* is not persuasive. In that case, the claimant suffered a lower back injury. His employer filed a petition seeking to terminate benefits on the basis that the claimant fully recovered. While the

13

termination petition was pending, the employer sent a letter to the claimant's physician and hospital advising it would not authorize further treatment because the employer's examining physician indicated the claimant had fully recovered. There, the WCJ granted penalties concluding the employer violated the WC Act by not paying for further treatment, including a surgery, without challenging the reasonableness or necessity of the treatment. *McLaughlin,* 808 A.2d at 288. The Board reversed, concluding the employer had no obligation to precertify or preapprove treatment that had not yet occurred. *Id.* This Court reversed the Board's order, stating the employer was obligated to continue paying for the claimant's treatment while its petition was pending. *Id.* at 288-89. We noted that the employer's decision to cease payment was based "on its physician's opinion that [the c]laimant had fully recovered from the work injury and was able to return to work without restrictions." *Id.* at 289.

Here, while Employer did assert that Claimant fully recovered from her work injury, that was not the basis for its decision to stop paying for Claimant's medical treatment with Dr. Lipson. In fact, Employer did not file its termination petition asserting full recovery until nearly a year after the claims adjuster's fax was sent.

Claimant also contends that because the fax sent by the claims adjuster incorrectly stated that the claim was being denied when it had, in fact, been accepted via an NCP, Employer committed fraud. Claimant essentially is asking this Court to look at the fax in a vacuum and disregard the other record evidence that indicates that the denial was based on causal relatedness. Although we agree that the fax was not a model of clarity, as set forth above, we decline to take this limited view in light of the other evidence presented.[9]

---

[9] Given our disposition, we do not address Claimant's assertion that a remand is necessary for the claims adjuster to testify.

Furthermore, to the extent Claimant asserts that the unpaid bills were related to the accepted work injury, not the rejected expanded injury set forth in the review petition, we agree with Employer that the record is devoid of any evidence to support this position. Dr. Lipson testified that only his first two bills were paid, not the others. However, he did not explain the nature of the treatment for which he was not paid. In addition, no bills were introduced into evidence from which one could determine whether the treatment was causally related to Claimant's work injury. A claimant bears the burden of showing that an employer or insurer violated the WC Act. *CVA, Inc.*, 29 A.3d at 1227. Claimant did not meet that burden here.

## IV.  CONCLUSION

For the foregoing reasons, the Order of the Board affirming the WCJ's Decision denying Claimant's penalty petitions is affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge

Judge Fizzano Cannon did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra Farabee,                :
             Petitioner    :
                      :
         v.          :  No. 650 C.D. 2019
                      :
Workers' Compensation Appeal  :
Board (Ahold USA Holdings, Inc.),  :
           Respondent  :

## **O R D E R**

**NOW**, January 30, 2020, the Order of the Workers' Compensation Appeal Board dated April 30, 2019, is **AFFIRMED.**

_____

**RENÉE COHN JUBELIRER,** Judge