# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gene M. Cooper (Deceased), : 
Sandra Cooper, as the : 
Administratrix of the Estate : 
of Gene M. Cooper, : 
                  Petitioner : 
                  :

       v. : No. 1407 C.D. 2015
                  : Submitted: April 15, 2016

Workers' Compensation Appeal : 
Board (Armstrong World : 
Industries, Inc.), : 
                  Respondent :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**             **FILED: July 13, 2016**

In this appeal, Sandra Cooper, Administratrix of the Estate of Gene M. Cooper (Claimant), challenges that part of the Workers' Compensation Appeal Board's (Board) decision that upheld a Workers' Compensation Judge's (WCJ) decision denying Claimant's request for unreasonable contest attorney fees. Upon review, we affirm.

## I. Background

In 2012, a WCJ issued a decision that determined Gene M. Cooper (Decedent)[1] sustained a 2004 work-related injury in the nature of toxic

---

[1] Gene M. Cooper died in February 2014.

encephalopathy, resulting in Parkinsonian symptoms, as a result of his exposure to chemicals during his employment with Armstrong World Industries, Inc. (Employer). Pursuant to the WCJ's 2012 decision, Employer was responsible for the payment of any and all reasonable, necessary and related medical expenses that Claimant incurred for the 2004 work injury. Employer was also directed to deduct 20% from Claimant's weekly compensation benefits and pay that amount to Claimant's counsel as his attorney fee.

A few months later, Decedent filed the first of four penalty petitions, alleging Employer's insurer paid Decedent's workers' compensation benefits, but refused to pay his attorney's share. Decedent sought a 50% penalty. About a week later, Decedent filed a second penalty petition, alleging Employer did not pay his medical bills. Thereafter, in October 2012, Decedent filed two additional penalty petitions, alleging Employer did not pay his medical bills and total disability benefits. Employer denied the material allegations. Hearings ensued before a WCJ.

After the hearings, the WCJ issued an extensive decision granting in part and denying in part Decedent's penalty petitions. The WCJ also determined Decedent met his burden of proving a 2012 left hip fracture and all associated treatment was causally related to his work injury.[2] Further, and of particular import to the present appeal, the WCJ declined to award unreasonable contest

---

[2] On this point, the WCJ explained that because there was a dispute as to the causal relationship between the work injury and the medical expenses, a portion of the penalty petitions necessarily included the elements of a review petition. The WCJ noted that strictness of pleadings was not required; both parties had notice of the issue of causal relationship and presented evidence on the issue.

attorney fees against Employer. The parties filed cross-appeals to the Board, which affirmed. Claimant now petitions for review to this Court.

## II. Issues

On appeal,[3] Claimant argues the Board erred in affirming the WCJ's determination that Employer had a reasonable basis to contest payment for expenses associated with Decedent's hip fracture. Claimant also asserts the Board erred by affirming the WCJ's decision to bar Decedent from introducing relevant testimony from a nurse that Employer's insurer sent to assess Decedent's medical chart, which would have showed Employer knew all along the bills it refused to pay were directly related to Decedent's work injury, which, in turn, would have shown Employer's contest was unreasonable.

## III. Discussion
## A. Attorney Fees
### 1. Contentions

Claimant first asserts a remand is warranted with a direction to assess reasonable costs and attorney fees as to Employer's unreasonable contest on the medical expenses related to Claimant's hip fracture. Claimant advances several arguments in support of her position that Employer's contest was unreasonable.

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

3

### a. "Obvious" Causal Connection

First, Claimant argues Employer's contest was inherently unreasonable because the relationship between Decedent's Parkinson's disease and toxic encephalopathy, which were previously deemed work-related, and the fall that caused his hip fracture, was obvious. Where a claimant receives medical treatment for new symptoms that allegedly arise from the accepted injury, and the employer refuses to pay the associated bills, the burden of establishing that the symptoms and treatments are related to the accepted injury turns on whether the connection is "obvious." See, e.g., Hilton Hotel Corp. v. Workmen's Comp. Appeal Bd. (Totin), 518 A.2d 1316 (Pa. Cmwlth. 1986). Claimant contends an "obvious" connection "involves a nexus that is so clear that an untrained lay person would not have a problem in making the connection between" the new symptoms and the compensated injury; the new symptoms would be a "natural and probable" result of the injury. See Kurtz v. Workers' Comp. Appeal Bd. (Waynesburg Coll.), 794 A.2d 443, 448 (Pa. Cmwlth. 2002) (citations omitted). Claimant maintains Kurtz controls here.

More particularly, Claimant argues, as explained in Kurtz, the question is whether Decedent's fall that caused his hip fracture was a "natural and probable consequence" of his Parkinson's disease and toxic encephalopathy. Claimant asserts it obviously was. The general public is aware Parkinson's patients are a significant fall risk. See http://www.pdf.org/en/fall09_fall_prevention (last visited June 14, 2016) (Parkinson's disease Foundation Website - outlining fall prevention strategies). Claimant contends Decedent fell 23 times in the year before and up to the time he broke his hip. She argues it is not a monumental leap to infer

4

that Decedent's brain injury and Parkinson's disease were what caused him to lose his balance, fall and break his hip.

Nevertheless, Claimant asserts, before the WCJ, Employer attempted to argue that, because no one saw Decedent fall when he broke his hip, the fall theoretically could be related to something other than his various work induced maladies. But, Claimant contends, the WCJ did not credit this argument; instead, the WCJ formed a conclusion that Decedent's fall resulted from his work injuries because that conclusion was obvious. Indeed, Claimant argues, nothing presented at the hearings regarding Decedent's condition and its consequences was new information to Employer.

### b. "But-for" Causation

Next, Claimant asserts this Court previously applied a "but-for" test in determining whether a claimant's injuries were work-related. See Berro v. Workmen's Comp. Appeal Bd. (Terminix Int'l, Inc.), 645 A.2d 342 (Pa. Cmwlth. 1994). According to Claimant, in Berro, the claimant was involved in a car accident while traveling to physical therapy for a work injury. This Court determined the injuries sustained in the car accident were work-related. In so doing, this Court applied a "but-for" test, and it determined "but-for" the claimant's initial work injury, he would not have been involved in the car accident. Claimant asserts the same rationale applies here because but-for Decedent's toxic encephalopathy and Parkinson's disease, he would not have been in the Dallastown Nursing Center, the long-term nursing facility where he resided when he fell. Thus, Claimant maintains Decedent's hip fracture was work-related as it would not

5

have happened "but-for" his housing in the Dallastown Nursing Center for treatment of his various conditions.

### c. Review of Decedent's Medical File

Claimant also argues Employer's contest was unreasonable because Nurse Ann Sehne (Nurse Sehne), who Employer's insurance carrier sent to Dallastown Nursing Center, reviewed Decedent's medical records in October 2012. Claimant maintains it is reasonable to infer Nurse Sehne learned that Decedent had a significant history of falls and these falls were connected to his work-related movement disorders. Indeed, Claimant argues, it strains credulity to infer Nurse Sehne reviewed Decedent's records and concluded he was constantly falling for some other reason.

Claimant asserts where, as here, an employer's own medical personnel is aware of a work injury, it is unreasonable for the employer to contest payment of expenses related to the injury. See Wallace v. Workers' Comp. Appeal Bd. (Pittsburgh Steelers), 722 A.2d 1168 (Pa. Cmwlth. 1999) (where employer's physician knew from the beginning that injury was work-related, case was remanded for determination of costs and attorney fees); Milton S. Hershey Med. Ctr. v. Workmen's Comp. Appeal Bd. (Mahar), 659 A.2d 1067 (Pa. Cmwlth. 1995) (grant of unreasonable contest attorney fees upheld where employer's physician initially acknowledged work injury).

### d. Alleged Inconsistency in WCJ's Findings

Further, Claimant contends the WCJ's factual reason for finding Employer's contest reasonable is internally inconsistent. Specifically, the WCJ

6

based his conclusion that Employer's contest was "reasonable" on a medical form someone submitted at York Hospital (where Decedent received treatment for his hip fracture), which included a box that was checked off indicating the injury was "not work related." F.F. No. 33(c). On the other hand, Claimant asserts, the WCJ specifically rejected this billing document as not credible as there was no evidence the form was "completed by a medical provider." F.F. No. 28(e). Claimant asks, if the WCJ could so easily reject this document based on that obvious deficiency, then "why shouldn't have [Employer] also done the same?" Pet'r's Br. at 16.

### e. Failure to Present Medical Evidence

As a final point concerning the WCJ's denial of unreasonable contest attorney fees, Claimant argues that during the proceedings here, Employer did not produce medical evidence or testimony to support its position that Decedent's hip fracturing fall was not causally related to his established work-related conditions. As a result, Claimant asserts Employer's contest was unreasonable *per se*. See e.g., Lewistown Hosp. v. Workmen's Comp. Appeal Bd. (Kuhns), 683 A.2d 702 (Pa. Cmwlth. 1996) (unreasonable contest where, at time contest was initiated, employer had no medical evidence to support its position); Thomas v. Workmen's Comp. Appeal Bd. (Dress Barn), 672 A.2d 368 (Pa. Cmwlth 1996) (employer presented no evidence to dispute claimant's account of slip and fall at work, making employer's contest unreasonable, and thus, claimant was entitled to award of attorney fees).

### 2. Analysis

Initially, we note, as the ultimate fact-finder in workers' compensation cases, the WCJ "has exclusive province over questions of credibility and

7

evidentiary weight …." A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013). The WCJ may accept or reject the testimony of any witness, including an expert witness, in whole or in part. Id.

Moreover, "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." Furnari v. Workers' Comp. Appeal Bd. (Temple Inland), 90 A.3d 53, 60 (Pa. Cmwlth. 2014) (citation omitted). We examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. Id. If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. Id. Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. Id.

Where a claimant succeeds in a litigated case, he is entitled to reasonable attorney fees pursuant to Section 440 of the Workers' Compensation Act (Act)[4] unless the employer meets its burden of establishing facts sufficient to prove a reasonable basis for its contest. Hansen v. Workers' Comp. Appeal Bd. (Stout Road Assocs.), 957 A.2d 372 (Pa. Cmwlth. 2008). This Section "is intended to deter unreasonable contests of workers' claims and to ensure that successful claimants receive compensation undiminished by costs of litigation." Dep't of

---

[4] Act of June 2, 1915, P.L. 736, as amended, added by the Act of February 8, 1972, P.L. 25, 77 P.S. §996.

8

Transp. v. Workers' Comp. Appeal Bd. (Clippinger), 38 A.3d 1037, 1049 (Pa. Cmwlth. 2011) (citation omitted).

The issue of whether an employer's contest is reasonable is a legal conclusion based on the WCJ's findings of fact.  Hansen.  The reasonableness of an employer's contest depends on whether the contest was prompted to resolve a genuinely disputed issue or merely to harass the claimant.  City of Phila. v. Workers' Comp. Appeal Bd. (Cospelich), 893 A.2d 171 (Pa. Cmwlth. 2006).

Here, in determining Employer presented a reasonable contest with regard to Decedent's fall and resultant hip fracture, the WCJ made the following findings and conclusions (with emphasis added):

> [29 (a).]    [Decedent] was living at Dallastown Nursing Center in July 2012.  He was able to ambulate freely within the facility.  At approximately 3:00 a.m. he fell and fractured his left hip. The fall was unwitnessed.  He was transported to York Hospital, where he was admitted for treatment, including open reduction internal fixation of the hip fracture.  … Dr. [Timothy] Martin [(Decedent's Physician)] credibly testified that [Decedent's] metabolic encephalopathy, Parkinsonism, and dementia could all make him prone to falling. [Decedent's Physician] credibly testified Parkinson's patients have a four-fold to five-fold increased risk of suffering a hip fracture. While [Decedent's Physician] conceded he could not know for sure whether [Decedent] fell because of some cause independent of the underlying work-related conditions, there is no evidence of any other cause for [Decedent's] July 2012 fall leading to the left hip fracture.  The left hip fracture was causally related to the work injury and Employer is responsible for payment of the medical bills for treatment of the left hip fracture ….  The York Hospital bills were submitted to Employer in March 2013 and have not been paid to date. Employer has violated the Act.  However, based upon: the [Health Care Financing Administration (HCFA)] forms

9

submitted by York Hospital, which indicated the treatment was not work related; the medical reports from York Hospital, which failed to indicate there was a causal relationship between the work injury and the hip fracture; the lack of an obvious causal relationship between the hip fracture and [Decedent's] work-related injuries; and the possibility that [Decedent's Physician's] opinions could have been found non-credible, equivocal, or incompetent; I do not find that any penalty is warranted based upon Employer's failure to timely pay the York Hospital bills.

\* \* \* \*

33.    [Decedent] has requested an Order directing Employer to pay attorney's fees for an unreasonable contest. For the following reasons, I find that Employer's contest to the Penalty Petitions was reasonable.

\* \* \* \*

c.    Employer had a reasonable basis to contest the Penalty Petition arising out of allegedly unpaid medical expenses allegedly related to the work injury. … The July 2012 left hip fracture was not obviously related to the work injury. As such, it was [Decedent's] burden to prove the left hip fracture and resulting treatments related thereto were causally related to the work injury. Despite not presenting the testimony or report of a physician of its own choosing, Employer elicited testimony from [Decedent's Physician] on cross-examination which formed a significant basis to legitimately dispute whether [Decedent] presented unequivocal medical testimony sufficient to meet his burden of proof. Moreover, the bill for the left hip fracture which Employer received from York Hospital was properly submitted with a HCFA form indicating the treatment was not work-related. … [Decedent] presented [his Physician's] testimony at the August 12, 2013 hearing. [Decedent's Physician's] testimony … did not definitively resolve the causal relationship between the left hip fracture, the disputed medications, and the work injury. … Although I have found a violation of the Act and imposed a penalty, I also find Employer had several genuine issues in dispute

10

related to the allegedly unpaid medical expenses[.] The contest was reasonable.

\* \* \* \*

2.      If an employee receives treatment for new symptoms that allegedly arise from a work-related injury and the employer refuses to pay the associated medical bills, which party has the burden of proof regarding causal relationship is dependent on the following: (1) If the causal connection is not obvious the burden is on the employee to establish the connection through unequivocal medical testimony. (2) If the causal connection is obvious, the burden is on the employer to prove that the new symptoms are not related. [*Kurtz*]. An 'obvious' connection 'involves a nexus that is so clear that an untrained lay person would not have a problem in making the connection between' the new symptoms and the compensated injury; the new symptoms would be a 'natural and probable' result of the injury. *Id.* at 447-448, citing, *Tobias v. WCAB (Nature's Way Nursery, Inc.)*, 595 A.2d 781, 784 [(Pa. Cmwlth. 1991);] *McDonnell Douglas Truck Services, Inc. v. WCAB (Feldman)*, 655 A.2d 655 (Pa. Cmwlth. 1995). When the connection between the injury and the alleged work-related cause is not obvious, it is necessary to establish the cause by unequivocal medical evidence. [*Hilton Hotel Corp.*].

3.      [Decedent] has cited *Kurtz* and *Gens v. WCAB (Rehabilitation Hosp.)*, 631 A.2d 804 (Pa. Cmwlth. 1993) to argue that he should not bear the burden of proof with regard to the hip fracture. I have previously ruled, at least twice, that *Kurtz* and *Gens* do not apply to the instant matter. *Kurtz* and *Gens* stand for the proposition that a [c]laimant does not bear the burden of proving treatment for new symptoms is causally related to a work injury when the causal connection between those new symptoms and the compensable injury is obvious. The [2012 WCJ] Decision … found [Decedent's] compensable work injury to be 'toxic encephalopathy resulting in Parkinsonian symptoms.' The compensable work injury could also be expanded to include dementia, seizure disorders, and GERD. Regardless, while it may be true that [Decedent's] previously adjudicated work-related injuries can lead to falls and an increased likelihood of hip fracture; a hip fracture is not a 'natural and probable result' of the work injuries, nor is the

11

connection between the work injuries and the hip fracture such that 'an untrained lay person would not have a problem in making the connection.' The lack of an obvious connection is established by the billing records submitted by York Hospital, which indicated the hip fracture was not related to [Decedent's] work, as well as by [Decedent's Physician's] concessions that [Decedent] could have suffered a hip fracture entirely unrelated to his work injury and that no one could know for sure whether the hip fracture was caused by something independent of the work injuries. Neither *Kurtz* nor *Gens* alleviate [Decedent] of the burden of proving the causal connection between his left hip fracture and his work injuries.

4.      [Decedent] has also argued that he should not have to establish a causal connection between any new conditions, injuries, or treatment received while in Dallastown Nursing Center based upon [*Berro*]. *Berro* held that injuries sustained by a claimant while driving to physical therapy for a work injury were compensable. [Decedent's] argument is, essentially, because [Decedent] [was] in Dallastown Nursing Center for treatment of his work injury, anything that happens to him in Dallastown Nursing Center is a compensable work injury. *Berro* is distinguishable from the instant matter. Specifically, *Berro* turned on the definition of 'injury arising in the course of his employment.' The *Berro* Court noted the definition includes 'all other injuries sustained while the employee is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employee's premises or elsewhere ….' The claimant in *Berro* was furthering the employer's business because he was attending physical therapy in an effort to return to work. In the present matter, [Decedent] was not at Dallastown Nursing Center in an effort to return to work. Rather, he was living at Dallastown Nursing Center, albeit because his work injury was such that he was required to live in a skilled nursing home. In any event, he was not receiving treatment on a continual basis. And he was not receiving treatment when he broke his left hip in an unwitnessed fall in the middle of the night in July 2012. [Decedent's] actions when he fell in July 2012 and broke his left hip were not 'in furtherance of the business or affairs of the employer.' *Berro* does not alleviate [Decedent] of his burden of proving the causal connection between the undisputed medical treatment and the work injury.

12

* * * *

6. Regardless, [Decedent] has met his burden of proving that the July 2012 left hip fracture and all associated treatment for the same was causally related to the work injury. Employer has argued that [Decedent's Physician's] testimony in this regard was equivocal and insufficient to meet … [Decedent's] burden of proof. An expression of medical opinion will satisfy the standard of unequivocal medical testimony if the expert testified that in the expert's professional opinion there is a relationship or that the expert thinks or believes there is a relationship. The testimony of the expert must be considered as a whole, and complete medical certainty is not required. Reservations relating to medical or scientific details do not affect the admissibility of the medical opinion as long as the expert does not recant the opinion or belief expressed. *Liveringhouse v. WCAB (ADECCO)*, 970 A.2d 508 (Pa. Cmwlth. 2009). Employer's argument in this case is based upon several limited concessions made by [Decedent's Physician] during cross-examination. Despite those concessions, [Decedent's Physician] did not recant his opinion or belief that he believed there was a relationship between the [Decedent's] work injury and the July 2012 fall and hip fracture. …

* * * *

17. An award of attorney's fees to the claimant is the rule and the exclusion is the exception to be applied only where the record establishes that the contest is reasonable. *Lemansky v. WCAB (Hagan Ice Cream Co.)*, 738 A.2d 498 (Pa. Cmwlth. 1999). The burden is on the employer to present sufficient evidence to establish the reasonable basis for a contest. *Weiss v. WCAB [(Birch)]*, 526 A.2d 839 (Pa. Cmwlth. 1988). Where the employer contests the claimant's petition but fails to demonstrate that there was a reasonable basis to question claimant's allegations therein, the contest was not reasonable. *Pruitt v. WCAB (Lighthouse Rehabilitation)*, 730 A.2d 1025 (Pa. Cmwlth. 1999). Employer presented sufficient evidence to establish a reasonable basis to contest the Penalty Petitions.

13

WCJ's Op., 5/19/14, Finding of Fact (F.F.) Nos. 29(a), 33(c); Concl. of Law Nos. 2-4, 6, 17. We discern no error in the WCJ's decision not to award Claimant unreasonable contest fees with regard to Employer's contest of the causal connection between Decedent's previously adjudicated work-related conditions and his subsequent fall and resultant hip fracture.

First, the WCJ properly rejected Claimant's contentions premised on Kurtz and Berro. More specifically, neither Kurtz nor Berro addressed the issue of unreasonable contest attorney fees. Rather, both cases addressed issues of causation between an accepted work injury and a subsequent injury. Here, the WCJ found Claimant established a causal relationship between his previously adjudicated work-related conditions and his subsequent fall and hip fracture through the testimony of Decedent's Physician. Thus, Claimant already prevailed on the issue of causation. Further, as the WCJ aptly recognized, both Kurtz and Berro are factually distinguishable from this case.

More particularly, in Kurtz, the claimant suffered a head injury, and the employer accepted liability for a concussion with retrograde amnesia and severe para-cervical spasms. The claimant subsequently underwent surgery to relieve his head pain. Over a year later, he again experienced pain in the area of his original injury, and he underwent treatment. The claimant submitted medical bills for that treatment to the employer's workers' compensation insurance carrier, which refused to pay them on the ground the claimant's current head pain was unrelated to the original work injury. The claimant then filed a petition to review medical bills and a reinstatement petition. A WCJ determined the claimant did not

14

meet his burden of proof, and, therefore, the treatments he received as a result of the head pain were not causally related to the original work injury. The Board affirmed.

On further appeal by the claimant, this Court determined the WCJ and the Board erred in applying the burden of proof. More particularly, because the employer accepted liability for the claimant's head injury, any natural and probable symptoms resulting from that injury were presumed to be related to that injury, and it was the employer's burden to establish otherwise. We stated:

> In the case *sub judice*, [the] [c]laimant's head injury was acknowledged by [the] [e]mployer through the [notice of compensation payable], and, thus, [the] [c]laimant's original injuries were admittedly compensable and related to his employment. There is no indication from the record that there was any termination of benefits or any final receipt. Accordingly, any natural and probable symptoms arising from [the] [c]laimant's compensable head injury are presumed to be related to that injury and it is [the] [e]mployer's burden to establish otherwise.

> [The] [c]laimant complained of dizziness and headaches and a burning sensation that were in the same area as his original head pain; just two inches from the scar left by his surgery. [The] [c]laimant indicated that the pain he felt was of the same type, although not as intense, as from the initial injury. It is difficult to imagine that similar pain appearing in such close proximity to the area of the original injury is not a natural and probable result of the original injury and, therefore, obviously related to such injury. Although the pain-free period of time between [the] [c]laimant's surgery and the recurrence of pain does not bolster the obviousness of the connection, the passage of time alone will not defeat it. We, therefore, hold that [the] [c]laimant's new symptoms obviously appear to be related to the original injury and it was [the] [e]mployer's burden, under these facts, to establish that the symptoms are indeed unrelated to the original compensable injury.

15

<u>Id.</u> at 448 (footnotes omitted). Ultimately, we determined the testimony of the employer's medical expert was equivocal and, as a result, could not satisfy the employer's burden of proving the claimant's medical bills were not associated with the claimant's original injury.

Here, unlike in <u>Kurtz</u>, Decedent's original injury was toxic encephalopathy resulting in Parkinsonian symptoms. As the WCJ recognized, although Decedent's original work injuries *could* lead to falls and an increased likelihood of hip fracture, a hip fracture is not a natural and probable result of the work injuries. Nor is the connection between the work injuries and the hip fracture such that an untrained lay person would not have a problem in making the connection. Thus, the WCJ properly distinguished <u>Kurtz</u> from the present case.

This determination is bolstered by the fact that Decedent's Physician conceded that Decedent could have suffered a hip fracture entirely unrelated to his work injuries, and no one could know for certain whether the hip fracture was caused by something independent of the work injuries. F.F. No. 29(a); WCJ's Hr'g, 8/12/13, Notes of Testimony (N.T.) at 132-33. In short, no error is apparent in the WCJ's determination that the causal connection between Claimant's original work injuries, toxic encephalopathy and Parkinsonian symptoms, and Claimant's subsequent fall and resultant hip fracture is not obvious. Thus, we discern no error in the WCJ's denial of unreasonable contest attorney fees on this basis.

In addition, in <u>Berro</u>, this Court held that, where a claimant sustained injuries in an accident while driving to physical therapy for treatment of earlier

16

work-related injuries, the injuries sustained in the car accident were compensable. We explained that "but for" driving for treatment of his earlier work injury, the claimant would not have been in a position to be involved in a car accident in which he sustained further injuries. This Court further stated:

> [I]t is in the interest of the employer that [the] [c]laimant seek rehabilitation and treatment in order to recover from the initial work-related injury. [The employer] will clearly benefit by not having to pay compensation as a result of [the] [c]laimant['s] recovery and return to work. As a result, we believe [the] [c]laimant['s] trip to the physical therapy session falls within the 'special circumstances' exception to the general rule that an employer is not liable for injuries which occur while the employee is travelling off the premises. See Peterson [v. Workmen's Comp. Appeal Bd. (PRN Nursing Agency), 597 A.2d 1116, 1119 (Pa. 1991)].
>
> In view of the foregoing, we conclude that [the] [c]laimant['s] injuries sustained … while driving directly to his physical therapy session, which was part of his treatment for his initial … work-related injury, are causally-related to his employment and that [the] [c]laimant['s] attendance at the physical therapy sessions was in the furtherance of the interests of his employer. Accordingly, we hold that [the] [c]laimant['s] injuries resulting from the automobile accident are compensable under Section 301(c)(1) of the Act, [77 P.S. §411(1)].

Berro, 645 A.2d at 345.

Here, unlike in Berro, Claimant's injury did not occur while he was traveling to or in the process of receiving medical treatment when he suffered the unwitnessed fall. Further, Claimant was not housed at the Dallastown Nursing Center with the prospect of returning to work. Thus, the WCJ here determined Decedent's actions when he fell and broke his hip in July 2012 were not "in furtherance of the business or affairs of the employer." WCJ's Op., 5/19/14,

17

Concl. of Law No. 4. In short, the WCJ correctly determined Berro did not alleviate Decedent of his burden of proving the requisite causal connection between his original work conditions and the subsequent fall and hip fracture.

We also reject Claimant's assertion that Employer's contest was unreasonable on the ground that Nurse Sehne reviewed Decedent's medical records at Dallastown Nursing Facility and, therefore, it was reasonable to infer that Nurse Sehne learned that Decedent had a significant history of falls and these falls were connected to his work-related movement disorders. In support of this argument, Claimant references the testimony of Susan Boone, administrator of Dallastown Nursing Facility, who provided Nurse Sehne access to Decedent's medical records when she visited the facility. See Pet'r's Br. at 14 (citing N.T., 8/12/13, at 59-63). Our review of the cited testimony does not support Claimant's argument.

In particular, Boone offered no definitive testimony which indicated that, based on her review of Decedent's medical records, Nurse Sehne knew of Decedent's history of falls or that Decedent's work-related conditions caused Decedent's fall that resulted in the hip fracture. Thus, as the WCJ found: "Nurse Boone provided Nurse Sehne access to Claimant's entire chart, although she did not know if Nurse Sehne read the chart. Nurse Sehne saw [Decedent], but did not examine him. Nurse Sehne did not ask Nurse Boone any questions about any of the care [Decedent] was being provided." F.F. No. 12(c) (emphasis added). In short, although the WCJ could draw an inference in Claimant's favor based on Boone's testimony that she provided Nurse Sehne access to Decedent's medical

18

records, the WCJ did not do so, and this Court cannot do so on appeal. Furnari; A & J Builders.

Claimant also maintains the WCJ erred in denying unreasonable contest attorney fees where the WCJ's decision contains a factual inconsistency. Specifically, Claimant contends the WCJ based his conclusion that Employer's contest was "reasonable" on a medical form someone submitted at York Hospital, which included a checked off box indicating the injury was "not work related," F.F. No. 33(c); however, the WCJ also specifically rejected this billing document as not credible as there was no evidence the form was "completed by a medical provider." F.F. No. 28(e). Contrary to Claimant's assertion, we see no inconsistency.

To that end, in determining Decedent's hip fracture was related to his established work-related conditions, the WCJ rejected the York Hospital billing documents to the extent those documents suggested Decedent's hip fracture was unrelated to the established work-related conditions. F.F. No. 28(e). In so doing, the WCJ stated there was no evidence that the HCFA form indicating that the treatment for Decedent's hip fracture was unrelated to the work injury was completed by a medical provider. Id.

Further, as *one* reason for determining Employer presented a reasonable contest with regard to the payment of medical expenses for Decedent's hip fracture, the WCJ stated the bill Employer received for Decedent's hip fracture was properly submitted with a HCFA form indicating the treatment was not work-

19

related. F.F. No. 33(c). We perceive no inconsistency between Finding of Fact No. 28(e) and 33(c). In Finding of Fact No. 28(c), the WCJ explained why the HCFA form did not alter his determination that the hip fracture was related to Decedent's work conditions. However, in Finding of Fact No. 33(c), the WCJ explained why Employer had a reasonable basis to contest the payment of medical expenses for the hip fracture based on a form Employer received that stated the hip fracture was not related to Decedent's work conditions.

Thus, the challenged findings relate to two distinct issues: (1) the issue of whether Decedent's hip fracture was causally related to his previously adjudicated work-related conditions, and, therefore, whether Employer was responsible for the medical bills for the hip fracture; and, (2) the issue of whether Employer presented a reasonable contest with regard to whether Decedent's hip fracture was related to his previously adjudicated work-related conditions where, among other things, Employer received a HCFA form that indicated the hip fracture was not work-related. We discern no inconsistency in the manner in which the WCJ discussed the HCFA form in these different contexts.

Finally, we reject Claimant's contention that Employer's contest was unreasonable on the ground that Employer did not present any credible medical evidence that Decedent's hip fracture was not related to his work conditions. To that end, as the WCJ properly stated, although Employer did not present medical evidence from a physician of its own choosing, it elicited testimony from Decedent's Physician on cross-examination that formed a significant basis to legitimately dispute whether Decedent presented unequivocal medical evidence to

20

meet his burden of showing the hip fracture was, in fact, related to his work conditions.

As this Court previously stated, "[t]he fact that the employer did not adduce medical evidence, but rather chose to rely upon the cross-examination of the claimant's physician does not render [its] basis for contest unreasonable." Cleaver v. Workmen's Comp. Appeal Bd. (Wiley), 456 A.2d 1162, 1163 (Pa. Cmwlth.1983). Also, "an employer's contest may be adjudged reasonable where the evidence lends itself to contrary inferences." McGuire v. Workmen's Comp. Appeal Bd. (H.B. Deviney Co.), 591 A.2d 372, 374 (Pa. Cmwlth. 1991) (citation omitted). Thus, a reasonable contest is established when medical evidence is conflicting or susceptible to contrary inferences and there is an absence of evidence that an employer's contest was frivolous or filed to harass a claimant. N. Phila. Aviation Ctr. v. Workmen's Comp. Appeal Bd. (Regan), 551 A.2d 609 (Pa. Cmwlth. 1988). Here, the testimony of Decedent's Physician as a whole is susceptible to contrary inferences as to causation and, therefore, raised a genuinely disputed issue as to whether Decedent's fall and resultant hip fracture was causally related to his established work-related conditions. Thus, no error is apparent in the WCJ's decision not to award unreasonable contest attorney fees on this basis.

### B. Exclusion of Nurse Sehne's Testimony
### 1. Contentions

Claimant also contends the Board erred in affirming the WCJ's decision to preclude Decedent from presenting Nurse Sehne's testimony. Claimant asserts Decedent asked for permission to present the testimony of Nurse Sehne, who was employed by the insurer and went to Dallastown Nursing Center to

21

examine Decedent's medical records. Claimant argues Nurse Sehne was given Decedent's entire file, including a list of all the falls he suffered. Decedent intended to call Nurse Sehne to testify to the fact that she was well aware that Decedent's Parkinson's disease, seizures and toxic encephalopathy constantly caused him to fall. Claimant asserts, if the WCJ permitted Decedent to present this testimony, there would have been no doubt that Employer's contest as to the expenses associated with Decedent's hip fracture was patently unreasonable. See Wallace; Mahar.

Claimant maintains the WCJ precluded Nurse Sehne's testimony because he believed the medical testimony from Decedent's treating physician was sufficient. Claimant argues this was an abuse of discretion where Nurse Sehne's testimony was directly relevant to what Employer knew, and when it knew it. Claimant argues when Nurse Sehne went to Dallastown Nursing Center and reviewed Decedent's entire file, including a list of all his falls, Nurse Sehne asked no questions and made no remarks about whether the Center was providing unnecessary treatment that would go unpaid. Claimant contends it is reasonable to infer from this visit and review of Decedent's records that Nurse Sehne came to the same obvious conclusion the WCJ reached, Decedent constantly fell because of his Parkinsonism, dementia, encephalopathy and seizures. Thus, Claimant asserts, if the insurer's own nurse knew this, Employer's contest was unreasonable. As a result, Claimant contends the Board erred in affirming the WCJ's decision to exclude this relevant evidence.

22

## 2. Analysis

The admission of evidence is within the sound discretion of the WCJ. Washington v. Workers' Comp. Appeal Bd. (Pa. State Police), 11 A.3d 48, 59 (Pa. Cmwlth. 2011). In addition, a WCJ may properly exclude evidence that is irrelevant, confusing, misleading, *cumulative*, or prejudicial. Id. This Court will not overturn a WCJ's determinations regarding the admission of evidence absent an abuse of discretion. Id. "An abuse of discretion occurs where the WCJ's judgment is manifestly unreasonable, where the law is not applied or where the record shows that the action is the result of partiality, prejudice, bias or ill will." Allegis Grp. & Broadspire v. Workers' Comp. Appeal Bd. (Coughenaur), 7 A.3d 325, 327 n.3 (Pa. Cmwlth. 2010).

Here, with regard to the presentation of Nurse Sehne's testimony, the following exchange occurred:

> [WCJ]: So you want to present [Decedent's Physician] live[?]
>
> [Decedent's Counsel]: Of course. If you're going to --- if it's your position [Berro] doesn't apply, [Gens] doesn't apply; it's on [Claimant] to prove that something that happened to somebody while they're hospitalized for a work-related injury has to be proven, then I need [Decedent's Physician].
>
> [Employer's Counsel]: But a report will do it, Judge.
>
> [Decedent's Counsel]: No, it won't.
>
> [WCJ]: Well, a report could potentially do it, but that doesn't mean they're precluded from taking the testimony.
>
> [Decedent's Counsel]: How do you make a credibility determination?

23

[WCJ]: So I'll allow you to take the testimony. And we'll go ahead and do it live, if that's how you want to do it. That's fine with me. Now, is that all we need to address the medical bills?

[Decedent's Counsel]: No. …

[Decedent's Counsel]: [Nurse] [Ann] Seine [sic]. She was the nurse manager that was sent by [Employer's workers' compensation insurance carrier] to Dallastown.

[WCJ]: Sue Boone [the administrator of Dallastown Nursing Center] can address that.

[Decedent's Counsel]: That's hearsay.

[WCJ]: We'll see if there's an objection.

[Decedent's Counsel]: And then what happens when there is?

[Employer's Counsel]: But Judge, the bills are being paid. That's what I don't understand. The bills are all being paid. There's no allegation that Dallastown, because they're not getting paid, is asking [Decedent] to go somewhere else. They're all being paid. I'll give you the updated payments. You know, it's a big to do about nothing. The bills are being paid within the first two weeks of the month for which the bills are being incurred. They're being paid within that 30 day period.

[WCJ]: … I understand your position. There's obviously a difference of opinion on that.

[Decedent's Counsel]: I'm just telling the Court, hearsay.

[WCJ]: Well, I mean, look, if Sue Boone says that she told [Ann] Seine [sic] when the payments need to be made, then that's what Sue Boone says. I really don't know what else you're trying to get out of [Ann] Seine [sic], frankly.

[Decedent's Counsel]: A lot.

[Employer's Counsel]: Judge, there's nothing. I'm going to object to --- there's nothing in her testimony that's going to be

24

relevant. We'll see what Ms. Boone says and then you can address the issue at that time.

[WCJ]: Right. I'm not going to permit testimony from [Ann] Seine [sic]. …

[Decedent's Counsel]: I want to enter an objection on the record about [Ann] Seine [sic]. [Ann] Seine is - -- may I put it on the record, please?

[WCJ]: Yes.

[Decedent's Counsel]: Yeah. Let me tell you what else I was going to get from [Nurse] [Ann] Seine [sic]. That it would be ridiculous to separate a hip fracture with Parkinson's, and that she was there and saw everything and knew by her visit to Dallastown and [Decedent], that it would be ridiculous and biologically implausible to separate a hip fracture from a Parkinson's patient.

[Employer's Counsel]: Judge, she's not a medical witness ---.

[Decedent's Counsel]: And a causal - -- she's a nurse. And Your Honor, guess what she has? First-hand experience. She was there. No hearsay. And I could find out, pretty quickly, how many times she's seen Parkinson's patients. Pretty quickly, how many ---.

[Employer's Counsel]: How is that relevant?

[WCJ]: We'll cover it with [Decedent's Physician].

[Decedent's Counsel]: Okay. All right. But I want that objection ---.

[WCJ]: I understand ---.

N.T., 7/17/13, at 35-42. Upon review, we discern no abuse of discretion in the WCJ's decision to exclude the testimony of Nurse Sehne.

More particularly, while Claimant now contends Nurse Sehne's testimony was necessary to show that Employer's contest of Decedent's hip fracture was unreasonable in order to obtain attorney fees, as evidenced by the above-quoted exchange, Decedent's counsel did not offer this as the reason he sought to present Nurse Sehne's testimony below. Rather, before the WCJ Decedent's counsel indicated he wished to present Nurse Sehne's testimony in order to establish a causal connection between Decedent's unwitnessed fall and resultant hip fracture and his work-related conditions. The WCJ determined that, because this issue would be covered by Decedent's Physician's testimony, Nurse Sehne's testimony was not necessary. In light of the fact that Decedent's counsel did not inform the WCJ that he wished to present Nurse Sehne's testimony in order to show Employer's contest of Decedent's hip fracture was unreasonable, no abuse of discretion is apparent in this regard.

Further, Decedent's counsel offered no clear explanation as to how Nurse Sehne's testimony would be distinct from and not covered by Decedent's Physician's testimony on the issue of the causal connection between Decedent's established work-related conditions and his fall and subsequent hip fracture. Therefore, no abuse of discretion is apparent in the WCJ's decision to exclude Nurse Sehne's testimony.

For all the foregoing reasons, we affirm.

_____
ROBERT SIMPSON, Judge

26

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gene M. Cooper (Deceased),     :
Sandra Cooper, as the     :
Administratrix of the Estate     :
of Gene M. Cooper,     :
            Petitioner     :
     :
       v.     :   No. 1407 C.D. 2015
     :
Workers' Compensation Appeal     :
Board (Armstrong World     :
Industries, Inc.),     :
            Respondent     :

# **O R D E R**

**AND NOW**, this 13th day of July, 2016, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

 

 

_____
ROBERT SIMPSON, Judge