# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

W&W Contractors, Inc., : 
               Petitioner : 
                           : 
           v. : No. 836 C.D. 2020 
                           : Submitted: January 15, 2021 
Workers' Compensation Appeal : 
Board (Holmes), : 
               Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**           **FILED: June 28, 2021**

W&W Contractors, Inc. (Employer) petitions for review of the Workers' Compensation Appeal Board's (Board) August 7, 2020 Order that affirmed a Workers' Compensation Judge's (WCJ) February 8, 2019 Decision which granted in part and denied in part Employer's Termination Petition,[1] granted Julius Holmes' (Claimant) Penalty Petition, and granted Claimant unreasonable contest attorney's fees. On appeal, Employer argues the Board erred in concluding it had not preserved its challenge to the award of attorney's fees and otherwise erred in affirming the

_____

[1] The WCJ granted the Termination Petition as to a right shoulder injury but denied it as to Claimant's other work-related injuries. (WCJ Decision, Finding of Fact (FOF) ¶¶ 7-9; Conclusions of Law ¶¶ 2-3.) Neither party appealed the WCJ's Decision regarding the Termination Petition.

award of those fees. Employer also asserts that the Penalty Petition should not have been granted because Employer rightly refused to pay inflated prices for disposable, non-medical supplies. Upon review, we affirm.

## I.     BACKGROUND

### A. History and Petitions

On May 3, 2004, Claimant fell about 12 to 15 feet and landed on his head while in the course and scope of his employment.[2] (WCJ Decision, Finding of Fact (FOF) ¶ 1a.) "The injuries were accepted as strain of chest, lower back and abdomen; herniations at C3-4, C4-5, C5-6 and C6-7; C5-6 radiculopathy; right L5 and bilateral SI radiculopathy, right shoulder impingement; and a right knee medial meniscus." (WCJ Decision at 4 (internal quotation marks omitted).) Claimant had two neck surgeries in 2005, a back surgery in 2008, and a knee surgery in 2011. (FOF ¶ 1b.) In a previous decision and order dated December 13, 2011, a different WCJ approved a Compromise and Release Agreement (C&R Agreement) "settling Claimant's right to future indemnity benefits for his May 3, 2004 injuries." (WCJ Decision at 4.) As part of the C&R Agreement, "Employer was to continue to pay reasonable, necessary and causally-related medical bills for Claimant's" work injuries "consistent with the cost containment provisions of the" Workers' Compensation Act (Act).[3] (*Id.*)

On November 3, 2016, Claimant filed a Penalty Petition alleging that Employer violated the Act by unilaterally ceasing payment of medical bills related

---

[2] Claimant, during a March 30, 2018 deposition, claimed he fell 30 feet. (Finding of Fact ¶ 1a.) However, the medical records reflect that he was 12 to 15 feet high on a beam that gave way and fell when he was hanging drywall. During his fall, Claimant hit a plank that was going through a ladder, bounced off the plank, struck his head on the floor, and lost consciousness. (*Id.* ¶ 4a.)

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

to his work injuries. (*Id.*) Employer filed an answer that denied the material allegations in the Penalty Petition. (*Id.*) While the proceedings on the Penalty Petition were ongoing, Employer filed its Termination Petition on January 11, 2018, asserting that Claimant had fully recovered from all of his work-related injuries as of December 6, 2017, the date of the Independent Medical Examination (IME) of Dennis W. Ivill, M.D. (*Id.*) Claimant filed an answer in which he denied the material allegations and requested unreasonable contest attorney's fees under Section 440 of the Act.[4] (*Id.*)

### B. Proceedings Before the WCJ

The WCJ held hearings on the Petitions, and, following the submission of testimony and documentary evidence, the WCJ issued a single Decision resolving

---

[4] Section 440 of the Act provides:

(a) In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

(b) If counsel fees are awarded and assessed against the insurer or employer, then the [WCJ] must make a finding as to the amount and the length of time for which such counsel fee is payable based upon the complexity of the factual and legal issues involved, the skill required, the duration of the proceedings and the time and effort required and actually expended. If the insurer has paid or tendered payment of compensation and the controversy relates to the amount of compensation due, costs for attorney's fee shall be based only on the difference between the final award of compensation and the compensation paid or tendered by the insurer.

77 P.S. § 996. Section 440 was added by Section 3 of the Act of February 8, 1972, P.L. 25.

the Penalty Petition, Termination Petition, and request for attorney's fees. Therein, the WCJ made the following relevant findings of fact.

Claimant testified before the WCJ and via a deposition[5] regarding the history of his work-related injuries, his treatment for those injuries, and his current condition. Claimant did not believe he was physically capable of returning to work given the heavy nature of his time-of-injury employment. Claimant described the supplies he received from Harburg Medical Sales Company (Harburg Medical), all of which his treating physician, Michael R. McCoy, M.D., prescribed to treat the work-related injuries. These supplies include ThermaCare heat wraps, which Claimant uses on his knees, ankles, neck, and shoulder, and supplies needed to operate his electronic muscle stimulation (EMS) unit, such as batteries, alcohol pads, and Vitamin E lotion, which he uses on his wrists once or twice a day. Harburg Medical also supplied him, as prescribed by Dr. McCoy, a memory foam mattress overlay, which helps Claimant's pain and provides relaxation. Claimant also testified about Lidocaine cream, prescribed by Dr. McCoy, that he receives from various pharmacies to treat his work-related injuries.

Claimant offered the deposition testimony of Joan Harburg (Harburg),[6] of Harburg Medical, which has provided durable medical equipment and supplies for Claimant as prescribed by Dr. McCoy and as needed by Claimant since the 2004 work injuries. (FOF ¶ 2a, h.) "On October 3, 2016, Harburg sent Claimant a shipment of medical supplies" that were prescribed by Dr. McCoy. (*Id.* ¶ 2b.) The supplies were: 24 packages of two 2x2 electrodes; 26 packages of two 2x4

---

[5] Claimant's testimony may be found at pages 20a-37a and 231a-73a of the Reproduced Record and is summarized in Findings of Fact 1 and 6.

[6] Harburg's testimony may be found at pages 73a-94a of the Reproduced Record and is summarized in Finding of Fact 2.

electrodes; 500 adhesive remover wipes; 4 bottles of Vitamin E lotion; 12 9-volt batteries; and 66 disposable heat wraps. (*Id.*) Harburg sent the bill for these items to the State Workers' Insurance Fund (SWIF), which is Employer's workers' compensation insurer. On October 17, 2016, the "bill was returned without payment because SWIF [] determined that the equipment was not for medical treatment related to the [] accepted work injury." (*Id.*) After receiving this rejection, Harburg "filed a Fee Review application with the Bureau of Workers' Compensation" (Bureau), which the Bureau denied "because of the issue of the causal relatedness of the supplies to the work injury and the treatment." (*Id.*) This same sequence of events occurred on November 29, 2016, December 6, 2016, January 23, 2017, and March 20, 2017. (FOF ¶ 2c-e.) Prior to October 3, 2016, Harburg Medical's bills were always paid by SWIF for Claimant. (FOF ¶ 2g.) Documentary evidence consistent with Harburg's testimony, including letters from SWIF denying payment, was submitted as Exhibits C-1, C-2, and C-3 (Harburg Depo.).[7]

Claimant also presented the deposition testimony of Dr. McCoy, who has treated Claimant for his work-related injuries approximately once a month since 2004.[8] Dr. McCoy testified regarding his treatment of Claimant's work-related injuries, the results of his physical examinations of Claimant, and his conclusions regarding Claimant's work-related injuries. Citing ongoing objective symptomology and Claimant's complaints of severe neck, back, and knee pain that were consistent with the work-related diagnoses, Dr. McCoy opined that Claimant has not fully recovered from the work-related injuries, continues to need medical treatment for those injuries, and is not capable of returning to work without

_____

[7] These documents may be found at pages 97a-126a of the Reproduced Record.

[8] Dr. McCoy's deposition testimony may be found at pages 136a-76a of the Reproduced Record and is summarized in Finding of Fact 4.

restrictions related to the work injuries. Dr. McCoy testified that he prescribed the Lidocaine cream, the EMS unit and related supplies, ThermaCare heat wraps, and memory foam mattress overlay as treatment for Claimant's work injuries. According to Dr. McCoy, Claimant's use of the EMS unit across his wrists, which are body parts not included in the accepted injuries, helps to stop any pain radiating from the neck into the hands which is related to Claimant's cervical fusion surgery. Dr. McCoy further explained that Claimant's use of the Lidocaine cream and ThermaCare wraps on the left knee, ankles, and left shoulder, which are body parts that are not included in the accepted injuries, helps with the pain Claimant experiences as a result of the various forms of radiculopathy, which are accepted work injuries.

Employer offered the deposition testimony of Dr. Ivill, who performed the December 6, 2017 IME of Claimant.[9] Dr. Ivill testified about his review of Claimant's medical records, his physical examination of Claimant, and his opinions as to the status of Claimant's work-related injuries. Dr. Ivill determined that Claimant had fully recovered from his work-related injuries based upon Dr. Ivill's review of the medical records, the history provided by Claimant, and the results of the examination, which Dr. Ivill described as objectively normal. According to Dr. Ivill, Claimant no longer needed any medical treatment for the work-related injuries and could return to work without restriction. As to the supplies provided by Harburg Medical, Dr. Ivill testified that an EMS unit would not be used on the wrists, which were not a part of the accepted injuries, to treat radiculopathy, but acknowledged that Claimant's C6-7 herniation could cause neck pain that radiated into the wrists. He further opined that Claimant's work-related injuries had resolved, and the

_____

[9] Dr. Ivill's deposition testimony may be found at pages 283a-367a of the Reproduced Record and is summarized in Finding of Fact 5.

6

supplies Claimant received from Harburg Medical were neither causally related to those injuries nor reasonable or necessary. However, he agreed that Claimant's right-sided L5 and bilateral S1 radiculopathy could cause pain into Claimant's legs and feet.

The WCJ found Claimant's evidence more credible than that of Employer. (FOF ¶¶ 7, 9.) The WCJ accepted the opinions of Dr. McCoy over those of Dr. Ivill because Dr. McCoy had been consistently treating Claimant since 2004 unlike Dr. Ivill's one-time examination in 2017. (*Id.*) As to the Penalty Petition, the WCJ found that Claimant presented credible evidence of record establishing that Employer violated the Act by unilaterally stopping payment of medical bills from Harburg Medical. (*Id.* ¶ 10.) The WCJ found Harburg's testimony credible and that testimony persuasively established that the bills and supporting documents were properly submitted to SWIF. (*Id.*) The WCJ opined that the Act provides many different ways for an employer to stop or suspend its payment obligations for medical expenses, such as by agreement of the parties, a WCJ order, or a successful utilization review determination, but that Employer did not take any of these routes. (*Id.*)

In addition, the WCJ noted that the dates of the unpaid bills predated Dr. Ivill's medical exam and full recovery opinion by one year. (*Id.*) The WCJ found Dr. Ivill's testimony that such bills were not causally related to the work-related injuries not persuasive, particularly where Dr. Ivill's opinion as to full recovery was rejected. (FOF ¶¶ 7, 10.) The WCJ determined that Dr. Ivill based his opinion on Claimant's testimony about using the medical supplies, including Lidocaine cream, the EMS unit, and ThermaCare heat wraps, on areas of his body that were not part of the accepted injuries. (*Id.* ¶ 10.) As an example, the WCJ pointed to Dr. Ivill's

7

testimony that he was aware that Claimant used the EMS unit for his wrists only, which were not part of the accepted injuries, but that later Dr. Ivill acknowledged that the C6-7 herniation, which was an accepted injury, could produce pain radiation into the hands and wrists. (*Id.* ¶¶ 5o, 10.) The WCJ accepted Dr. McCoy's testimony that Claimant used "these modalities on areas of radiating pain attributable to injuries that had been accepted." (*Id.* ¶ 10.) Rejecting Employer's causation-based reasons for unilaterally stopping payment of Harburg Medical's bills, the WCJ granted Claimant's Penalty Petition and determined "that a penalty of 40% of the amount of the unpaid medical bills after statutory repricing should be assessed and paid to Claimant." (*Id.* ¶ 10; *see also* Conclusions of Law (COL) ¶¶ 4-5.)

As to Claimant's request for unreasonable contest attorney's fees, the WCJ stated:

> In support of a request for unreasonable contest counsel fees, [Claimant's counsel] initially submitted a Quantum Meruit Time Sheet seeking an unreasonable contest counsel fee of $2,000.00 based on 10 hours of legal work at a rate of $200.00 per hour. . . . After the close of the evidentiary record and submission of briefs on the Penalty Petition, Employer filed a Termination Petition and requested that the Penalty Petition be re-opened and consolidated with the Termination Petition. Over objecti[on] from Claimant's counsel, this WCJ granted Employer's request. With his second brief on the consolidated Petitions[, Claimant's counsel] sought an additional $2,000.00 based on 10 hours of work at the rate of $200.00 per hour. The WCJ finds that the factual and legal issues in this case warrant an assessment of unreasonable contest counsel fees. As previously noted, Employer did not have an agreement, a WCJ Order, a successful utilization review determination or even an opinion regarding causation at the time the bills were denied. Additionally, [Claimant's counsel] performed a variety of legal services regarding these [P]etitions, including appearing at multiple hearings, participating in [four] depositions and preparing two briefs. As such, this WCJ finds that the factual and legal issues in this case warrant an assessment of unreasonable contest counsel fees and Employer shall pay $4,000 as a separate counsel fee directly to [Claimant's counsel].

(*Id.* ¶ 11; *see also* COL ¶ 6.)

### C. Employer's Appeal to the Board and the Board's Opinion

Employer appealed to the Board. On its appeal form, Employer challenged Findings of Fact "7, 9, 10, 11 & 12" and argued that the evidence did not support the finding of a violation of the Act because the medical bills in question were not causally related to the work injuries, Harburg Medical was not found to be a provider and did not have standing to file a Penalty Petition, the equipment and supplies provided were not medical supplies under the Act, and those supplies were not billed in accordance with the Medical Cost Containment Regulations. (Reproduced Record (R.R.) at 401a.) Employer also challenged Conclusions of Law "3, 4, 5, 6, & 7," asserting the same arguments as above related to the supplies Harburg Medical provided to Claimant. (*Id.* at 402a.) Although Employer identified Finding of Fact 11 and Conclusion of Law 6 on the appeal form, which addressed the award of unreasonable contest attorney's fees, Employer did not assert any particular arguments as to the errors it claimed the WCJ committed in making that finding and conclusion. (*Id.* at 401a-02a.)

Upon review, the Board affirmed the WCJ's Decision, determining that substantial, competent evidence supported the WCJ's finding that Employer violated the Act by unilaterally ceasing payment of Claimant's medical bills. (Board Opinion (Op.) at 8.) The Board reasoned that Claimant had the burden to prove Employer's violation of the Act and had done so through the testimonies of Dr. McCoy and Harburg. (*Id.*) Pursuant to Section 306(f.1)(1) of the Act, 77 P.S. § 531(1), the Board held that Employer was required to pay for Claimant's medical treatment causally related to his work injuries. (Board Op. at 8.) In addition, the Board concluded that Harburg Medical is a health care provider under Section 109 of the

9

Act, 77 P.S. § 29,[10] and that Harburg Medical properly submitted bills and supporting documentation to SWIF for payment, which were unilaterally denied. (Board Op. at 9.) The Board reviewed the credited testimony and found that Employer unilaterally ceased paying Claimant's medical bills based solely on causation, and as such exposed itself to a penalty award. Because the WCJ's findings that the treatments for which Employer denied payment were causally related to Claimant's work-related injuries, and were supported by substantial, competent evidence, the Board held that the WCJ did not abuse his discretion in awarding Claimant penalties. (*Id.*) It further noted that Claimant, not Harburg Medical, had filed the Penalty Petition and, therefore, Employer's arguments as to Harburg Medical's standing were "moot." (*Id.* at 10.)

With regard to Employer's arguments related to the billing of the items supplied by Harburg Medical, the Board held these arguments were a matter for a fee review proceeding. (*Id.* at 9.) Thus, the arguments were not for the WCJ or the Board to consider in the current appeal. (*Id.*)

Finally, regarding the WCJ's award of unreasonable contest fees, the Board found that Employer waived this argument because Employer did not raise it in its notice of appeal to the Board. (*Id.* at 9-10.) According to the Board, argument of

---

[10] Section 109 of the Act, titled "Definitions," provides in pertinent part:

> **"Health care provider"** means any person, corporation, facility or institution licensed or otherwise authorized by the Commonwealth to provide health care services, including, but not limited to, any physician, coordinated care organization, hospital, health care facility, dentist, nurse, optometrist, podiatrist, physical therapist, psychologist, chiropractor or pharmacist and an officer, employe or agent of such person acting in the course and scope of employment or agency related to health care services.

77 P.S. § 29 (emphasis in original). Section 109 was added by Section 3 of the Act of July 2, 1993, P.L. 190.

an issue in a brief to the Board does not cure the defect of failure to raise an issue in the notice of appeal. (*Id.* (citing *McGaffin v. Workers' Comp. Appeal Bd. (Manatron, Inc.)*, 903 A.2d 94 (Pa. Cmwlth. 2006)).) The Board further explained:

> If the issue were [sic] properly raised on appeal, while we agree that some of the medical supplies were for parts of the body not acknowledged as being part of the work injury, [] Claimant had been receiving said treatment for some period of time and [] Employer had no medical evidence at the time of the filing [of] the Termination Petition or showing thereafter that the prescribed treatment was unrelated. The medical evidence obtained by [] Employer was one-year past-petition.

(*Id.* at 10.)

For these reasons, the Board affirmed the WCJ's Decision. Employer now petitions this Court for review.[11, 12]

## II. DISCUSSION

Employer asserts the Board erred in affirming the award of unreasonable contest attorney's fees and the Penalty Petition. We address these allegations of error in turn.

### A. Unreasonable Contest Attorney's Fees

Employer first argues that, contrary to the Board's conclusion, it properly preserved its challenge to the WCJ's award of unreasonable contest attorney's fees

---

[11] This Court's scope of review "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

[12] Employer filed an application for supersedeas with this Court, which, after argument, was granted as to the payment of the 40% penalty but denied as to the unpaid medical bills of Harburg Medical and unreasonable contest attorney's fees. *W&W Contractors, Inc. v. Workers' Comp. Appeal Bd. (Holmes)* (Pa. Cmwlth., No. 836 C.D. 2020, filed Dec. 15, 2020).

11

because it "list[ed] the corresponding finding of fact and conclusion of law in its notice of appeal." (Employer's Brief (Br.) at 11.) According to Employer, this is all that is required to sufficiently notify the Board and Claimant that it was challenging the award of such fees pursuant to *Garnett v. Workmen's Compensation Appeal Board (Equitable Gas Co.)*, 631 A.2d 705 (Pa. Cmwlth. 1993). Thus, Employer argues, the Board erred in finding the issue waived.

In addition, Employer asserts that the reasons the Board otherwise provided for upholding the award of the unreasonable contest attorney's fees were erroneous because Employer's contests were prompted to resolve genuinely disputed issues and not to harass Claimant. Employer argues it reasonably contested Claimant's ongoing disability through the Termination Petition, which was based on Dr. Ivill's opinion that Claimant was fully recovered and no longer needed any medical treatment, a position that was accepted at least as to Claimant's right shoulder injury. As to its contest of the Penalty Petition, Employer maintains its contest was reasonable because it raised valid questions of law regarding the "boundaries on the scope of 'medical' supplies which must be financed by the workers' compensation carrier under the Act," how the challenged supplies were billed, and the cost of those supplies. (Employer's Br. at 13-14.) Employer maintains that because the Penalty and Termination Petitions were litigated together, "Claimant's counsel likely had little extra work in litigating the Penalty Petition as opposed to simply litigating the Termination Petition," as both Petitions required counsel to attend hearings and depositions. (*Id.* at 12-13.)

Claimant responds there was no error in the Board's conclusion that Employer did not properly preserve its challenge to unreasonable contest attorney's fees before the Board because "[c]laims of legal error without specificity do not constitute issues

properly raised and preserved and are therefore waived." (Claimant's Br. at 5 (citing *Jonathan Sheppard Stables v. Workers' Comp. Appeal Bd. (Wyatt)*, 739 A.2d 1084 (Pa. Cmwlth. 1999)).) According to Claimant, while Employer raised five issues in its appeal to the Board, none addressed the award of unreasonable contest attorney's fees. (*Id.* (citing R.R. at 401a).) Claimant asserts that, even if the issue was preserved, Employer's contest was not reasonable because, after 13 years of paying for the supplies prescribed by Dr. McCoy and supplied by Harburg Medical to treat his work-related injuries, Employer suddenly issued notices that the materials "were all of the sudden unrelated," without any supporting medical evidence. (*Id.* (citing R.R. at 75a-76a).) It was not until more than a year later, after Dr. Ivill's IME, that Employer had evidence to support its prior denials of payment, and this evidence was ultimately rejected by the WCJ as not credible.

Employer responds that *Jonathan Sheppard Stables* supports its argument that it preserved the issue in its appeal to the Board simply by listing the paragraph being challenged. Further, Employer argues that neither the longevity of its payments for the supplies nor the outcome of the litigation before the WCJ or Board made Employer's contest unreasonable. It raises valid issues of apparent first impression regarding the extent insurers must pay for "highly-inflated, disposable, single-use items without supervision of a licensed physician," and, as such, its contest was reasonable. (Employer's Reply Br. at 4.)

Upon review, we agree with the Board that Employer did not preserve its challenge to the award of unreasonable contest attorney's fees because Employer did not raise the issue with specificity in its notice of appeal. The Board's regulation at 34 Pa. Code § 111.11(a)(2) requires that "[a]n appeal or cross appeal shall be filed with the Board on a form provided by the Board" and the form filed "must contain"

13

"[a] statement of the **particular grounds** upon which the appeal is based, including reference to the specific findings of fact which are challenged and the errors of law which are alleged. General allegations which do not specifically bring to the attention of the Board the issues decided are insufficient." (Emphasis added.)

Employer relies on *Garnett* for support. However, while *Garnett* stated that the listing of a challenged factual finding's number, alone, was sufficient to provide notice of the issues upon which the appeal was based, the Court did so noting that its "research ha[d] failed to locate caselaw dispositive of [the] issue, nor ha[d] counsel provided [the Court] with any." 631 A.2d at 707. Since *Garnett*, the Court has consistently held "that when a party fails to abide by the requirements of 34 Pa. Code § 111.11(a)(2) by not raising an issue **with the requisite specificity in the appeal documents** before the Board, that party **fails to preserve the issue**." *McGaffin*, 903 A.2d at 101 (emphasis added). *See also Freeman v. Workers' Comp. Appeal Bd. (Sava SeniorCare)* (Pa. Cmwlth., No. 1349 C.D. 2019, filed July 10, 2020) ("[M]erely listing the numbers of the findings of fact or conclusions of law in the WCJ decision that are challenged constitutes a failure to raise any claim with any degree of specificity in [an] appeal to the Board.") (internal quotation marks omitted);[13] *Matticks v. Workers' Comp. Appeal Bd. (Thomas J. O'Hora Co., Inc.)*, 872 A.2d 196, 202 (Pa. Cmwlth. 2005) ("[The [e]mployer effectively waived its arguments [by not raising them in the appeal documents and t]he fact that [the e]mployer may have argued the issues in its brief to the Board is unavailing as it failed to comply with 34 Pa. Code § 111.11(a)."). In light of these other cases, *Garnett*'s ongoing viability is questionable.

---

[13] Unreported opinions of this Court, although not precedential, may be cited for the persuasive authority pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

Employer also claims that *Jonathan Sheppard Stables* supports its arguments, but we are not persuaded. In that case, the employer filed an appeal form with the Board on which it simply listed the findings of fact and conclusions of law it was challenging, without any explanation as to why they were being challenged. 739 A.2d at 1088. Citing 34 Pa. Code § 111.11(a)(2), the Court held that the "[e]mployer [had] utterly failed to raise any of [its] . . . claims of error with any degree of specificity in its appeal to the Board," as required by that regulation, and, therefore, had waived those issues. *Id.* at 1089. Employer is correct that the Court in *Jonathan Sheppard Stables* would not address the employer's arguments pursuant to Pennsylvania Rule of Appellate Procedure 1551(a), Pa.R.A.P. 1551(a) (stating "[o]nly questions raised before the government unit shall be heard or considered" by the appellate court). However, the basis of that conclusion was that simply listing a challenged finding of fact or conclusion of law is insufficient to comply with 34 Pa. Code § 111.11(a)(2). The failure "to raise [an] issue with specificity in the appeal documents as required by 34 Pa. Code § 111.11(a)(2)" means that the issue is not "preserv[ed] . . . for review to the Board and, subsequently, per" Pa.R.A.P. 1551(a), "for review by this Court." *McGaffin*, 903 A.2d at 101-02. The Court subsequently applied *Jonathan Sheppard Stables* in *Matticks* to hold that the employer waived its arguments because it did not comply with 34 Pa. Code § 111.11(a)(2) when it only listed the findings of fact and conclusions of law without explanation. *Matticks*, 872 A.2d at 201-02.

Under this precedent, Employer did not preserve its challenge to the WCJ's award of unreasonable contest attorney's fees because it did not raise that issue in its appeal documents with the level of specificity required by 34 Pa. Code § 111.11(a)(2). The only reference to the WCJ's award of unreasonable contest

15

attorney's fees in Employer's notice of appeal was the inclusion of Finding of Fact 11 and Conclusion of Law 6 in the list of findings of fact and conclusions of law that were being challenged. (R.R. at 401a-02a.) While Employer specified some issues in the appeal form, none encompassed the issue of the award of unreasonable contest attorney's fees. (*Id.*) That an appellant raises some issues with specificity does not mean that other issues not so raised may be later argued. *McGaffin*, 903 A.2d at 102. Accordingly, we cannot say the Board erred in finding that Employer did not preserve this issue for review, and, as it was not preserved before the Board, we will not address its merits in this appeal pursuant to Pa.R.A.P. 1551(a). *Jonathan Sheppard Stables*, 739 A.2d at 1088-89; *McGaffin*, 903 A.2d at 102-03.

### B. Penalty Petition

Employer argues the Board erred in affirming the grant of the Penalty Petition because Claimant did not meet his burden of proving that Employer violated Section 306(f.1)(1) of the Act by not paying bills for supplies that Employer contends are not "medical" in nature, like batteries, and are unreasonably priced due to the supplies' availability at lesser cost elsewhere. According to Employer, the issue in dispute "is the line between 'medical' supplies, for which the insurance carrier is responsible, and non-medical supplies for which the [c]laimant should bear the cost." (Employer's Br. at 15.) The term "medical" is not defined by the Act, and under the common and approved dictionary definition of that word, the term means "of, or relating to, or concerned with physicians or the practice of medicine." (Employer's Br. at 16 (quoting *Medical*, Merriam-Webster Dictionary (2020)).) Employer argues that, here, it is Claimant, not Dr. McCoy, that determines the amount of supplies needed from Harburg Medical, which removes those supplies from the purview of being "medical." Guidance on this issue, according to

Employer, may be found in *Pennsylvania Department of Transportation v. Workers'*
*Compensation Appeal Board (Clippinger)*, 38 A.3d 1037, 1042, 1045 (Pa. Cmwlth.
2011), in which this Court held that a home fitness pool was not reasonable or
necessary as it was not indispensable and would result in a windfall to the claimant.
Employer contends that, like the home pool in *Clippinger*, the supplies at issue here
are not "indispensable" as viable alternatives exist and can be purchased from other
sources, like Amazon, at considerably less cost, and result in a windfall to both
Harburg Medical and Claimant. Employer further argues that these supplies are not
"durable medical equipment" under the Act, or under a common and approved usage
of those terms, because they are all disposable in nature. Employer maintains that
the WCJ and Board erred in not considering these arguments in determining whether
Claimant met his burden of proving Employer's violation of the Act, and this
requires reversal of the grant of the Penalty Petition.

Claimant asserts he met his burden of proof on the Penalty Petition because
the failure to pay medical bills is a direct violation of the Act, and an employer that
unilaterally ceases payment of medical bills, as Employer did here, runs the risk of
penalties if the bills are ultimately deemed related to the work injury. (Claimant's
Br. at 7 (citing *Listino v. Workmen's Comp. Appeal Bd. (INA Life Ins. Co.)*, 659 A.2d
45 (Pa. Cmwlth. 1995)).) According to Claimant, in order for Employer to stop
paying for these medical expenses, it had to file a utilization review (UR), which did
not occur here. Claimant maintains that Employer appears to have abandoned its
initial reasoning for denying payment, lack of causation, and its current arguments
that the expenses are not medical expenses or are not otherwise payable are raised
without supporting evidence in the record. Further, the supplies prescribed and
provided, the mattress overlay, supplies to run his EMS unit, and ThermaCare heat

17

wraps, are all medical expenses, similar to the expenses that qualified for payment in *Griffiths v. Workers' Compensation Appeal Board (Seven Stars Farms, Inc.)*, 943 A.2d 242 (Pa. 2008) (home and vehicle modifications are reimbursable as medical expenses), *Zubach v. Workers' Compensation Appeal Board (Paradise Valley Enterprise Lumber Co.)*, 892 A.2d 41 (Pa. Cmwlth. 2006) (replacement of stair glides constitutes qualified medical expenses), and *Jackson Township Volunteer Fire Co. v. Workmen's Compensation Appeal Board (Wallet)*, 594 A.2d 826 (Pa. Cmwlth. 1991) (testing for AIDS and hepatitis were qualified medical expenses).

Claimant further argues that Employer's contentions that the supplies provided by Harburg Medical are not reasonable or necessary or that the amount of reimbursement is improper are matters for UR or fee review. (Claimant's Br. at 7-8 (citing 77 P.S. § 531; 34 Pa. Code §§ 127.251-127.302; *Fotta v. Workers' Comp. Appeal Bd. (U.S. Steel/USX Corp.)*, 714 A.2d 479 (Pa. Cmwlth. 1998)).) Claimant points out that no UR petition was ever filed on any of the challenged expenses and, in denying payment based on causation, Employer prevented Harburg Medical from seeking fee review to address these arguments. (*Id.* (citing *Harburg Med. Sales Co. v. Bureau of Workers' Comp.*, 911 A.2d 214 (Pa. Cmwlth. 2006)).) Claimant urges the Court to reject, as the WCJ and the Board have rejected, Employer's "impermissible attack, without any competent evidence," on its failure to follow the Act and precedent. (*Id.* at 8.)

Employer replies that *Griffiths*, *Zubach*, and *Jackson Township* are distinguishable because the supplies here are not comparable to the orthopedic appliances at issue in the former two cases and the blood tests administered in the latter case. The supplies here are not "medical." Employer maintains that Claimant's arguments regarding it having to challenge these issues via the UR

18

Review or Fee Review process "presuppose[s] that the supplies are considered 'medical' in nature," and the issue here is not appropriate for UR proceedings because "there is no physician directing care for" Claimant, only Claimant decides when and how many supplies he needs. (Employer's Reply Br. at 5-6.) As the issue in this case involves a challenge as to whether these supplies are even medical, a medical fee dispute would not be appropriate. Employer contends it "is not arguing that the [supplies provided by Harburg Medical] are not reasonable or necessary" or "objecting solely to the . . . markup in price," but is instead arguing that it is not obligated to pay for those items as they are not "medical" in the first place. (*Id.* at 6-7.)

Section 435(d) of the Act authorizes the imposition of penalties upon an employer or insurer if there is a violation of the Act or its regulations or rules.[14] 77 P.S. § 991(d). The claimant bears the burden of showing that an employer or insurer has violated the Act. *CVA, Inc. v. Workers' Comp. Appeal Bd. (Riley)*, 29 A.3d 1224, 1227 (Pa. Cmwlth. 2011). Once a claimant meets the prima facie burden, an employer may then offer rebuttal evidence to show that no such violation occurred. *Clippinger*, 38 A.3d at 1047. A WCJ is not required to award a penalty even if a claimant establishes that a violation occurred. *The Budd Co. v. Workers' Comp. Appeal Bd. (Kan)*, 858 A.2d 170, 176 (Pa. Cmwlth. 2004). The decision to award or deny penalties is within the sole discretion of the WCJ and is a decision that this Court will not reverse absent an abuse of that discretion. *Id.*

---

[14] Section 435(d) provides "The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure," "[e]mployers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable," and this "penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable." 77 P.S. § 991(d).

19

Pursuant to Section 306(f.1)(1)(i) of the Act, an "employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies, as and when needed." 77 P.S. § 531(1)(i). An employer's obligation to pay for medical expenses extends to those that are causally related to the work injury. *CVA, Inc.*, 29 A.3d at 1227. "Once the employer's liability for the work injury has been established, the employer may not unilaterally stop making benefit payment[s] in the absence of a final receipt, an agreement, a supersedeas[,] or any other order of the WCJ authorizing such action." *McLaughlin v. Workers' Comp. Appeal Bd. (St. Francis Country House)*, 808 A.2d 285, 288 (Pa. Cmwlth. 2002). "Absent such authority, . . . the employer must continue to make payment[s] while challenging the claimant's entitlement to benefits." *Id.* at 288-89.

In determining whether an employer may be liable for penalties for the unilateral cessation of paying for medical benefits, this Court has recognized a "clear distinction . . . between 'reasonableness' and 'causation' cases." *Listino*, 659 A.2d at 47. "In all cases where an employer questions the reasonableness and necessity of a claimant's work-related medical bills," the "employer can never unilaterally cease medical payments." *Id.* at 47 & n.6. But, an "employer, who questions 'causation' and the subsequent medical bills, may escape penalty provision liability for unilaterally ceasing to pay for these medical bills, **if** a [WCJ] later determines that the medical bills [were] indeed not causally related to the work-related injury." *Id.* at 47 (emphasis in the original). In the latter scenario, "the employer is . . . not subject to penalties under the Act." *Id.*

20

Here, the denials sent to Harburg Medical each stated that payment was being denied because "[u]pon review, it has been determined that the current medical treatment **is not causally related** to the original accepted work injury." (R.R. at 48a, 56a-57a, 101a, 109a-10a, 121a (emphasis added).) Even the denials sent after Claimant filed the Penalty Petition stated that payment was denied because "it ha[d] been determined that the current medical treatment **is not causally related** to the original accepted work injury." (*Id.* at 57a, 121a (emphasis added).) Notably, the causation-based challenge to these bills precluded Harburg Medical from obtaining a fee review, during which the costs of the supplies could have been reviewed. (*Id.* at 49a, 63a, 68a, 102a, 116a, 121a.) As Employer's unilateral cessation of payment was based on causation, Employer could only escape liability for penalties "**if** [the WCJ] later determine[d] that the[] medical bills [were] indeed not causally related to the work-related injury." *Listino*, 659 A.2d at 47 (emphasis in the original). The WCJ here rejected Employer's causation arguments, finding that substantial evidence supported the conclusion that the supplies were used to treat pain associated with Claimant's work-related injuries. For this reason, the WCJ did not err in granting the Penalty Petition and assessing penalties under *Listino*.

Although Employer offers additional explanations for why its unilateral refusal to pay the Harburg Medical bills is not a violation of the Act, the actual denials relied on a lack of causal relatedness. Notwithstanding its asserted reason, Employer still contends it can escape liability for penalties under the Act as a result of its unilateral refusal to pay these bills based on its arguments regarding the reasons the supplies Harburg Medical provides to Claimant do not constitute "medical" treatment or equipment and because the costs of those supplies are "highly-inflated." (Employer's Br. at 9, 23.) However, Employer has not cited any support for its

proposition that these reasons **authorize the unilateral cessation** of the payment of a claimant's bills under the Act such that it can escape liability for penalties. The Act places the burden on an employer to continue to make payments while the employer challenges the claimant's entitlement to those benefits, which, if successful, would relieve the employer of its obligation to pay those benefits. *McLaughlin*, 808 A.2d at 288-89.

To the extent Employer relies on *Clippinger* to justify its actions or as "guidance," that reliance is misplaced. While *Clippinger* involved a penalty petition, that petition related to the employer's refusal to pay for physical therapy and prescriptions based on causation and the failure of the provider to provide forms. The determination as to whether the employer was required to pay for the prescribed home fitness pool was made in the context of a **UR determination** that granted the claimant approval for the installation of the pool as being reasonable and necessary, and a petition to review medical benefits seeking payment for the installation of the pool. *Clippinger*, 38 A.3d at 1039-40. In reversing the direction for the employer to pay for the pool, this Court reasoned that the WCJ had erred in not considering whether, under the circumstances where other therapeutic pools were available to the claimant, the home pool was an "indispensable device" and a "windfall[]" to the claimant, and remanded for the WCJ to do so. *Id.* at 1045. On this basis, the Court also vacated a portion of a 50% penalty award, which had been based, in part, "on the unliquidated cost of the purchase and installation of the . . . pool" and "cost of renovation[s to the c]laimant's home." *Id.* at 1047-48. Although *Clippinger* provides some guidance on the boundaries of what treatments or supplies may be reasonable and necessary to treat a work injury, it does not authorize an employer's **unilateral** cessation of the payment of bills for supplies the employer claims not to

be "medical" in nature or speak to the employer's liability for penalties if it takes such unilateral action.  Therefore, *Clippinger* does not require a different result.

### III. CONCLUSION

For the foregoing reasons, we discern no error in the Board's Order affirming the WCJ's Decision granting the Penalty Petition, awarding a 40% penalty, and awarding unreasonable contest attorney's fees.  Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

W&W Contractors, Inc.,        :
           Petitioner     :
                            :
         v.           :   No. 836 C.D. 2020
                            :
Workers' Compensation Appeal     :
Board (Holmes),                  :
           Respondent    :

# O R D E R

**NOW**, June 28, 2021, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge